Omaha National Bank vs. Johnson.

Omaha National Bank, Appellant, vs. Johnson, Respondent.

*September 6 — September 24, 1901.*

*Principal and surety: Knowledge of secondary liability: Release from liability: Extension of time of payment.*

1. No matter what form a contract may take, if the fact that one of several obligors thereto is a surety merely, as between himself and his co-obligors, is brought to the knowledge of the creditor, he owes to such surety the duty of having no transactions or dealings with the principal debtors which shall vary the former's position or prejudice him.

2. In an action by a bank upon promissory notes given to it, uncontradicted evidence that one of the makers stated to the cashier, at the time the notes were executed and when all the parties were present, that he was going to "back up" and "stand behind" the other makers, and that the cashier understood that such maker was signing merely as security, is *held* to show that he was a surety merely, although by reason of the form of the notes he made himself absolutely liable in the first instance.

3. When notes which one of the makers had signed as surety became due, new notes with specified times of payment were taken, interest thereon paid in advance, and the old notes canceled and given up,— all without the knowledge or consent of the surety. *Held,* that the surety was released from liability.

4. The fact that the renewal notes in such case were signed in the name of the K. & D. Coal Co., instead of in the individual names of K. and D. (who did business in the form of said corporation), is immaterial, where it appears that they were given to represent the same indebtedness as the original notes.

Appeal from a judgment of the circuit court for Dane county: R. G. Siebecker, Circuit Judge. *Affirmed.*

Suit on four promissory notes, dated in the spring and summer of 1897, all signed by C. H. Davidson, M. D. Karr, and the defendant, *Harry Johnson.* It appeared by plaintiff's evidence that Karr and Davidson were engaged in business at Omaha in the form of a corporation known as the Karr & Davidson Coal Company; that, after two of the notes in suit had been given and discounted by the plaintiff

and the money carried to the account of that corporation, they applied for more money, saying that they desired to enlarge their business, offering the signature of the defendant in addition to their own. An interview then took place between the bank officers and the defendant, together with Karr and Davidson, in which, according to the plaintiff's testimony, defendant stated that he was going in with Karr and Davidson and was going to back them up; that he was going to stand behind them.; and at the request of the bank he gave a property statement, showing his own financial condition. The testimony of the cashier was that he understood that the defendant was going security for them. Thereafter, as the several notes fell due, the bank took new notes signed by the Karr & Davidson Coal Company, to some of which were joined Karr and Davidson personally. These notes were discounted, interest thereon paid in advance, and the net proceeds credited upon the bank account of the Karr & Davidson Coal Company, and a check given by that company to take up the pre-existing notes bearing defendant's signature, which were stamped "Paid" and delivered up. Several renewals of each of such notes of the company were indulged, until it failed in November, 1898. No knowledge of or consent to these transactions on the part of the defendant was shown. The complaint alleges that the several notes of the Karr & Davidson Coal Company were given to represent the same indebtedness originally evidenced by the notes sued on, signed by the defendant with Davidson and Karr.

At the close of plaintiff's evidence, on motion of the defendant, judgment of nonsuit was entered, from which the plaintiff appeals.

For the appellant there was a brief by *W. R. Bagley* and *Rufus B. Smith*, and oral argument by *Mr. Smith*. To the point that the substitution of another paper for the notes signed by the defendant did not release him, there being

no agreement to accept the substituted paper in payment of the original, they cited *Allis v. Meadow Spring D. Co.* 67 Wis. 16; *First Nat. Bank v. Finck*, 100 Wis. 446; *First Nat. Bank v. Case*, 63 Wis. 504.

For the respondent there was a brief by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford*.

DODGE, J. Two propositions were decided by the circuit court, both of which are vigorously assailed by the appellant. The first is that it appeared by the plaintiff's own evidence that the defendant, *Johnson*, to the knowledge of the plaintiff, bore the relation of surety to the indebtedness originally evidenced by the notes signed by him and here sued upon; second, that by the taking of the several renewal notes the plaintiff extended the time of payment of that indebtedness, and thereby discharged the defendant. The rule is well settled that wherever, as between joint or several obligors to a contract, the duty of the one is primary and of the other secondary, so that, as between themselves, the obligation or the debt is properly that of the former, who thus owes to the latter the duty of exoneration, the relationship of principal and surety exists, no matter what the form of the contract or how absolute may be the undertaking of him who is in fact the surety. This relationship cannot vary or diminish the rights of the creditor upon the original contract. He may even ignore the principal debtor and sue the surety alone, at his will or convenience, if the form of the contract warrants. But, if the fact of the true relationship between the debtors is brought to his knowledge, he owes to him who is only secondarily liable that duty which the creditor uniformly owes to the surety, of having no transactions or dealings with the principal debtor which shall vary the surety's position or jeopardize him. This duty rests upon the actual relation between the parties, and cannot be obscured or excused by any considerations of

form or manner of contracting.  *Harris v. Brooks,* 21 Pick.
195; *Guild v. Butler,* 127 Mass. 386; *Canadian Bank v.
Coumbe,* 47 Mich. 358, 362; *Riley v. Gregg,* 16 Wis. 666;
*Gates v. Hughes,* 44 Wis. 332, 338; *Irvine v. Adams,* 48 Wis.
468; *Breitengross v. Farr,* 100 Wis. 215; Brandt, Suretyship
& G. §§ 29–37.

In the light of this rule of law, we are convinced that the
circuit court decided rightly that the defendant here was
but a surety.  The testimony offered by the plaintiff from
the mouths of its own officers was open to no other reason-
able construction than that, the parties all being present, it
was understood and explained that the defendant was not
the beneficiary of the loans, nor the primary debtor for their
repayment, but that he was pledging his liability upon a
specific written contract as security for the debt of some
one else.  No other possible significance can be accorded the
statement that in signing such papers he was to " back up "
and " stand behind " the others,— a meaning which is em-
phasized and rendered all the more clear by the expression
that he was understood to be signing merely as a security.
Thus we reach the conclusion, as did the circuit court, that
the defendant was a surety merely for the indebtedness evi-
denced by the four notes which are the basis of this action,
although, by reason of the form of such notes, he made him-
self absolutely liable in the first instance.

Among the acts by which a creditor will release a non-
consenting surety, none has been more frequently or more
universally declared effective than a binding extension of the
time of payment of the indebtedness.  *Riley v. Gregg,* 16
Wis. 666; *Hallock v. Yankey,* 102 Wis. 41, 43.  The reasons
for the efficacy of such act are that during the time of the
extension the creditor has disabled himself from proceeding
to collect from the principal debtor, and has subjected him-
self to an increased peril of such debtor's becoming insolvent
and unable to pay, thus protracting the period of peril to

the surety beyond that to which he had assented. It seems too plain for debate that the plaintiff here has effectively extended the time of payment of the indebtedness for which defendant originally made himself liable. When the notes which he had signed became due, new notes, with specified time of payment,— sometimes sixty and sometimes ninety days,— were taken, the notes signed by the defendant were canceled and given up, and this was done upon a consideration uniformly held sufficient to make the extension binding upon the creditor, namely, upon the payment of interest in advance. *Batavian Bank v. McDonald*, 77 Wis. 486; *Hallock v. Yankey, supra*. The only answer which appellant is able to suggest to this obvious conclusion is that in some instances the renewal or extension notes were not the notes of any of the parties whose names appeared upon the original notes, from which he argues that the giving of the new notes of itself raises no presumption of extension of the original indebtedness. It is pretty apparent that the parties recognized no distinction between Karr and Davidson, the individuals engaged in the coal business, and the Karr & Davidson Company, the corporation under which it was conducted; and that the indebtedness was understood by all to be the indebtedness of that business, namely, of the corporation conducting it. It is unnecessary, however, to discuss the effect of the testimony in this respect, for plaintiff, in its complaint, has expressly set up and asserted the relationship between the new notes taken and the pre-existing indebtedness. Thus it is alleged in each instance that the renewal or extension notes made by the Karr & Davidson Company were "delivered to the plaintiff to represent the said indebtedness of the defendant and said Davidson and said Karr," and to evidence the sum of money due to it from the makers of the original notes. This leaves no uncertainty as to the transaction had by the bank with both the individuals, Karr and Davidson, or with the corporation, nor as to their relation

to the indebtedness for which the defendant was surety. By thus repeatedly extending the time at which payment of the indebtedness could be enforced from those primarily and equitably liable therefor until, by reason of insolvency, the indebtedness was not collectible at all, the plaintiff has discharged the defendant from his liability thereon. The circuit court properly entered judgment of nonsuit.

*By the Court.*— Judgment affirmed.