THE BOHN MANUFACTURING COMPANY, Appellant, vs. REIF and others, Respondents.

*January 13—February 3, 1903.*

*Bills and notes: Individual signers: Pleading: Novation: Consideration: Evidence: Estoppel.*

1. An ordinary promissory note, signed by defendants individually as makers, contained an option of payment in lumber at going rates. The note was a plain, unambiguous, and complete document, and, when construed with the accompanying agreement,

left nothing for explanation. In an action thereon the answer alleged, among other facts, that prior to the giving of such note the defendants, to the knowledge of the plaintiff, had agreed to form a corporation, and gave the note in suit with the understanding that they were signing a note for the proposed corporation, and that plaintiff received it with that understanding; that the corporation was afterwards formed, and, before the maturity of the note, it offered to pay the note in lumber, but plaintiff declined to receive the same. There was no mutual mistake alleged, nor any attempt to state any claim for equitable relief, nor was there any counterclaim for reformation. *Held*, that the answer in that respect stated no defense, and parol evidence was inadmissible for any purpose thereunder.

2. Such answer further alleged that the note was always considered a liability of the corporation by both plaintiff and defendants; that plaintiff made a written agreement with the corporation to take certain lumber in payment of the note, which the corporation was willing to deliver, but which plaintiff neglected to take; that afterwards the corporation made a voluntary assignment for the benefit of creditors, and that plaintiff filed therein a duly verified claim for the amount due upon the note, treating the corporation as the maker thereof, and received a dividend thereon. It was not alleged that the agreement of the corporation to pay was based upon any consideration, nor was it alleged that the plaintiff ever assented to any discharge of the defendants from liability thereunder. *Held*, that the facts stated were insufficient to show a release of defendants by novation, and in that respect the answer failed to state a defense.

3. The executive officers of a payee of a note, signed by defendants as individuals, testified positively that they never had any knowledge of an alleged agreement whereby a corporation, formed by defendants, assumed and agreed to pay the note; that they never consented to make, and were never asked to make, a substitution of debtors. *Held*, that the fact that the payee had considerable correspondence with such corporation, and agreed to accept lumber from it in discharge of the note, and subsequently proved the note as a claim against the corporation, it having made an assignment for benefit of creditors, was not in itself sufficient to show knowledge by the payee of an assumption of the debt of the corporation.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

This is an action to recover the amount due upon a prom-

issory note. The complaint alleges the execution and delivery by the defendants to the plaintiff on or about October 1, 1895, of a promissory note in the following form:

"$3,000.                     St. Paul, Minn., Sept. 20, 1895.

"On or before one year after date, I promise to pay to the order of *Bohn Manufacturing Company* three thousand dollars, at Manitowoc Savings Bank, Manitowoc, Wis. Value received. With interest before and after maturity at the rate of 7 per cent. per annum until paid. Subject to optional payment as per agreement of *Bohn Mfg. Co.* under date of Sept. 24, '95.

> "Peter Nikolai,
> "Julius Hamancheck,
> "Anton E. Reif,
> "Lewis C. Reif,
> "Henry Kiel,
> "Mathas Stambooh."

That the agreement of optional payment referred to in the note, which was made at the time of the execution and delivery of the note, was as follows:

"St. Paul, Minn., Sept. 24, '95.

"Messrs. Reif Bros. and others.

"Branch, Wis.

"*Gentlemen:* We hereby agree to buy from you $3,000 worth of lumber within one year from date, in case you desire to sell it to us, at the market price f. o. b. St. Paul; the price to be governed by what the lumber can be bought for from other mills. We agree to do this in consideration of your signing a note for $3,000, due on or before one year from September 20th, which you have given us in part payment of certain sawmill machinery which we have sold you.

> "Truly yours,
> "Bohn Manf'g. Co."

That said agreement of purchase was made at the time of the execution and delivery of said note. That no lumber whatever has been received by the plaintiff, pursuant to said agreement, from the defendants, or either or any of them, or from any other person on their account, and the defendants

have never exercised their option to pay said $3,000, or any part thereof, in lumber, if any such option was reserved to them by said writing, except the payments hereinafter admitted. The complaint shows payment in lumber to the amount of $442.42, paid and indorsed January 14, 1897, as per statement rendered on that date by the Reif Lumber & Manufacturing Company for lumber sold plaintiff, labor performed on its account, and rent and advances made to that date, and excepting the further payment of $572.80 paid and indorsed on said note on April 27, 1898, paid by John R. Ragan, assignee of the Reif Lumber & Manufacturing Company, which company was a corporation under the laws of the state of Wisconsin, and which sum was paid by said Ragan as a dividend payable by him as assignee of said Reif Lumber & Manufacturing Company, payable to its creditors. That the plaintiff is the legal holder of the note. That no other payments have been made thereon. That there is due from the defendants to the plaintiff, by virtue of the premises, $2,942.12.

The defendants *Anton Reif, Lewis Reif, Mathas Stamboch,* and *Peter Nickolai* answered the complaint substantially as follows: The answer admits the incorporation of the plaintiff, and alleges that the defendants entered into a mutual agreement to form a corporation for the purpose of engaging in the manufacturing and sale of lumber prior to September 20, 1895, and that such agreement was well known to the plaintiff, and that on or about September 20, 1895, the defendants purchased of the plaintiff a saw-mill for the sum of $5,000; $2,000 to be paid in cash, and the balance in lumber. That such purchase was made for and in behalf of the corporation then forming, as was well known by the plaintiff. That pursuant to said agreement of purchase, and in consideration of plaintiff's written agreement to take lumber as set forth in the complaint, the defendants signed the note in suit, and with the understanding that they were signing a note for the cor-

poration then forming, and that the plaintiff well knew this to be so, and received and accepted said note as of such corporation.    That shortly after and pursuant to said agreement the defendants incorporated under the name of Reif Lumber & Manufacturing Company, and that said corporation took charge of said sawmill, and engaged in the business contemplated by said agreement and purchase.    That prior to and at the maturity of said note the Reif Lumber & Manufacturing Company offered to sell lumber to the plaintiff, and offered it the opportunity to select lumber from its stock in the yard in payment of said note, but that the plaintiff neglected or declined to receive the same.    That said note was at all times considered as a liability of the said Reif Lumber & Manufacturing Company by said corporation as well as by the plaintiff, and that the sum of $442.42 alleged in the complaint to have been paid in lumber, and indorsed on said note, was paid by said Reif Lumber & Manufacturing Company, and so received by the plaintiff.    That in February, 1897, said plaintiff and said Reif Lumber & Manufacturing Company entered into another agreement in writing, wherein the prices of various kinds of lumber and grades of lumber were specified, and whereby it was agreed that the plaintiff was to select and take a sufficient quantity of lumber in the yard to pay said note in full.    That an agent of the plaintiff was then on the ground to select and take lumber, and that said Reif Lumber & Manufacturing Company was then ready and willing to load all the lumber selected by the plaintiff on the cars, but that plaintiff neglected to so select and take any lumber whatever so offered and pointed out.    That in April, 1897, said Reif Lumber & Manufacturing Company made a voluntary assignment for the benefit of its creditors.    That the payment of $572.80 on April 27, 1898, alleged in the complaint, was paid to the plaintiff by the assignee of said corporation, with whom the plaintiff had filed a duly verified claim for the amount due on said note, on which note the said Reif Lumber

·& Manufacturing Company was not an indorser, as alleged
·in the complaint, but was considered and treated by the
plaintiff as the maker and payor of said note. That these de-
·fendants were not personally liable upon said note, but that
said note is the debt of the said Reif Lumber & Manufactur-
·ing Company, and not of these defendants, and that at no
·time was payment ever demanded of these defendants by the
·plaintiff.

Upon the trial of the case before a jury, the plaintiff ob-
jected to reception of any evidence under the answer, because
it stated no defense. The objection was overruled, and excep-
·tión taken. At the close of the entire evidence the plaintiff
moved that a verdict be directed for the plaintiff, which
·motion was overruled, and exception taken. The following
·special verdict was rendered by the jury:

"1. At or about December 30, 1895, and after the Reif
Lumber & Manufacturing Company was organized as a cor-
poration, in the fall of the year 1895, did the defendants turn
·over and transfer to that company the property which had
·been sold by the plaintiff, and for the purchase price of which,
in part, the note in suit was given? *Answer* (by the court,
by consent of counsel). Yes.

2. In consideration for that transfer of said property to it,
·did the said Reif Lumber & Manufacturing Company promise
and agree to and with the defendants to assume the payment
·of said note, and pay the same in the place and stead of the
said defendants? *Answer* (by the court, by consent of coun-
·sel). Yes.

3. At any time before said Reif Lumber & Manufacturing
Company made a voluntary assignment for the benefit of its
·creditors, on May 19, 1897, was it agreed and understood by
·and between the plaintiff, on the one part, and the defendants
and the Reif Lumber & Manufacturing Company, on the
other part, that the plaintiff accepted the latter company as
·maker and payor of said note, instead of said defendants,
and that they were wholly released from liability thereon?
*Answer* (by the jury). Yes.

4. If your answer to the third question be 'No,' then do not
·answer this question; but if your answer to the third ques-

tion be 'Yes,' then answer this question: Was the payment of $442.42, which is indorsed on said note under date of January 14, 1897, made thereon by said Reif Lumber & Manufacturing Company pursuant to the agreement referred to in the third question, and as the maker of said note, and so accepted by the plaintiff? *Answer.* Yes (by the jury).

5. If your answer to the third question be 'No,' then do not answer this question; but, if your answer to the third question be 'Yes,' then answer this question: Was the payment of $572.80, which is indorsed on said note under date of April 27, 1898, and which was paid thereon as a dividend by the assignee in said voluntary assignment, made pursuant to the agreement referred to in the third question, and so accepted by the plaintiff? *Answer.* Yes (by the jury).

6. In the matter of the assignment of the said Reif Lumber & Manufacturing Company, insolvent, did the plaintiff file with the assignee their proof of claim as a creditor of the former company, based upon said note, and stating in such claim that said insolvent company was the maker of said note, and, as such maker, was liable to plaintiff thereon? *Answer* (by the court). Yes.

7. Upon the claim so filed, did said assignee pay to plaintiff, as a creditor of the insolvent Reif Lumber & Manufacturing Company, the sum of $572.80, which is indorsed on said note under date of April 27, 1898? *Answer* (by the court). Yes.

8. Did the Reif Lumber & Manufacturing Company at any time indorse said note? *Answer* (by the court). No.

9. Did said Reif Lumber & Manufacturing Company, or its assignee, in its voluntary assignment, at any time make any payment on said note as an indorser thereof? *Answer.* (by the court). No.

10. Under and pursuant to the written agreement made by plaintiff and said Reif Lumber & Manufacturing Company on February 26, 1897, did the company then offer, in good faith, and being then ready and able so to do, to deliver to plaintiff, and to load on the cars, all lumber which was then in the lumber yard of said Reif Lumber & Manufacturing Company, and which plaintiff's agent and representative, then on the ground, should point out and select, to be taken in payment of said note? *Answer.* Yes (by the jury).

11. If you should find that such offer was made, then state whether or not the same was in compliance with the terms of said agreement of February 26, 1897. *Answer.* Yes (by the jury).

12. If you find that such offer was made, then state whether the value of the lumber so offered to the plaintiff under said agreement of February 26, 1897, was sufficient to pay the balance then unpaid on said note? *Answer.* Yes (by the jury).

13. What is the amount owing and unpaid on this note at this date,—January 22, 1901? *Answer* (by the court, by consent of counsel). $2,873.35.

14. If you find that the offer referred to in the tenth question was made, then state whether the plaintiff failed and neglected to take the lumber so offered. *Answer.* Yes (by the jury).

15. If said offer was made, could the plaintiff, by the exercise of reasonable diligence, have received and taken the lumber so offered, before said voluntary assignment was made, on May 19, 1897? *Answer.* Yes (by the jury).

16. Did said Reif Lumber & Manufacturing Company at any time write its name on the back of said note, or authorize any person to do so? *Answer* (by the court, by consent of counsel). No."

Upon this verdict, judgment for the defendants was rendered, and the plaintiff appeals.

For the appellant there was a brief by *Sedgwick, Sedgwick & Schmidt,* and oral argument by *G. G. Sedgwick.*

For the respondents the cause was submitted on the brief of *Baensch & Cloupek.*

WINSLOW, J. The plaintiff seasonably objected to the admission of any evidence under the answer for the reason that it states no defense, and the correctness of the ruling upon that objection is the first question for consideration. The answer is set forth at length in the statement of the case. It is sufficient here to say that it alleges, in effect, (1) that prior to the giving of the note in suit the defendants, to the knowl-

·edge of plaintiff, had agreed to form a corporation for manu-
facturing lumber, and that on the 20th of September, 1895,
they purchased of the plaintiff a sawmill on behalf of the
projected corporation, and gave the note in suit, with the
understanding that they were signing a note for the corpora-
tion, and that plaintiff received it with that understanding;
(2) that the corporation was formed shortly afterwards, and
·engaged in manufacturing lumber in the mill, and, before
maturity of the note, offered to pay the note in lumber, but
that plaintiff declined to receive such lumber; (3) that the
note was always considered a liability of the corporation by
both plaintiff and defendants, and that in February, 1897,
plaintiff made a written agreement with said corporation to
take sufficient lumber to pay the note, which lumber the ·cor-
poration was· ready and willing to deliver, but that plaintiff
neglected to take such lumber, and that in April following
the corporation made a voluntary assignment; (4) that the
plaintiff filed a verified claim with the assignee for the amount
·due on the note, treating the corporation as the maker thereof,
·and received a payment thereon from the assignee.

The question presented is whether these allegations state
·any defense. The note in suit, the execution of which is ad-
mitted, is a simple promissory note, signed by individuals, in
the usual form, except that it contains an option allowing pay-
ment to be made in lumber at going rates. It is a plain, un-
ambiguous, and complete document, (when construed with the
accompanying agreement), which leaves nothing for explana-
tion. It contains no doubtful or elliptical expressions, justi-
fying the introduction of proof of surrounding facts and cir-
·cumstances in order to comprehend its meaning. There is
nothing uncertain, nothing to explain. The first part of the
·answer seems to be formed upon the idea that the legal effect
of this plain and unambiguous personal obligation can be
·changed so that it will become an obligation of a corporation
not then in being, by proof that all the parties knew at the

time that a corporation was to be formed to operate the mill, and that there was an oral understanding that it was to be considered to be the note of such corporation, and not of the individuals who signed it. No mutual mistake is alleged, nor is there any attempt to state an equitable counterclaim for reformation of the written agreement; but the bald proposition seems to be that the effect of a plain and unambiguous written agreement may be changed by proof of an oral mental understanding of the parties, so that it shall mean something entirely different. We shall spend no time in showing that such evidence is inadmissible for any purpose under the pleading. The principle which forbids its admission is as old as the law itself, and is not open to discussion. It is therefore plain that this part of the answer states no defense.

As to the remaining allegations of the answer, it seems quite doubtful upon what theory they were framed, or what defense they were supposed by the pleader to state. Apparently, it was thought that they might be construed to state either an agreement of novation of debtors, or an agreement of assumption of the debt by the corporation, to the knowledge of the plaintiff, by which the defendants became sureties only therefor, and were released by negligent failure of the plaintiff to collect the debt of the new principal. Certainly it cannot be argued that any other defense is stated, or even suggested, by this part of the answer. The theory that a novation of debtors is stated must at once be rejected. Novation of debtors means the substitution of one debtor for another. It can only take place by mutual agreement, to which the creditor, the old debtor, and the new debtor assent, and by which the old obligation is extinguished, and a new and valid obligation is created, and takes the place of the old one. *Lynch v. Austin,* 51 Wis. 287, 8 N. W. 129; *Spycher v. Werner,* 74 Wis. 456, 43 N. W. 161; *Lane v. Magdeburg,* 81 Wis. 344, 51 N. W. 562. While it is alleged in the answer that the new corporation agreed to pay the note, it is nowhere

alleged that such agreement was based upon any considera-
tion, so as to be binding on the corporation; nor is it alleged
that the plaintiff ever assented to any discharge of the obliga-
tion of the defendants.

It seems equally plain that the remaining supposed defense,
namely, that the defendants had become sureties, and were
discharged by neglect of the creditor to collect of the new
principal when such collection could have been easily made,
is not stated by the answer. If the new corporation purchased
the mill of the defendants, and, as part of the consideration
therefor, agreed to pay the debt to the plaintiff, it is probably
true that the defendants thereby became, as between them-
selves and the corporation, surety only for the payment of the
·debt; and it may also be true that, in case the fact of such
assumption was known to the plaintiff, it would owe to the
defendants the duty of having no dealing with the new prin-
cipal which would jeopardize the surety's position. *Gates v.
Hughes,* 44 Wis. 332; *Bank v. Johnson,* 111 Wis. 372, 87 N.
W. 237. Conceding all this to be true, however, there are
fatal deficiencies in the answer, in failing to state that the
corporation ever assumed to pay the debt for a consideration
of any kind, and also in failing to state that the plaintiff was
ever informed that such an agreement had been made. In
the absence of these facts, the plaintiff owed the defendants
no duty even to attempt to collect its debt of the corporation,
because, as to the plaintiff, the defendants were still prin-
cipals, and bound to pay the debt at all hazards.

Neither the fact that the corporation agreed with plaintiff
to discharge the note in lumber, nor the fact that the plaintiff
presented a claim in the assignment proceedings, operates to
relieve the defendants of liability. The plaintiff was entitled
to get its pay from any one who was willing to pay, and its
efforts to that end, in the absence of knowledge of the assump-
tion of the debt, for a consideration, by the corporation, did
not prejudice its rights against the original debtors.

The inevitable conclusion is that the answer states no de-
fense, and that the objection to the reception of any evidence
under it should have been sustained.   The objection having
been overruled, however, and evidence having been received
under the answer, it is necessary to consider in what respect
the situation was changed by the evidence.   In one important
respect the defendants' position is improved by the evidence.
It was shown to be a fact that on the 30th day of December,
1895, the defendants transferred the sawmill and machinery,
which they had bought of the plaintiff, to the new corpora-
tion, and the corporation assumed and agreed to pay the note
here in suit.   As to the other essential fact, namely, knowl-
edge on the part of the plaintiff of the assumption, the case
is as bare of evidence as the answer is of allegation.   The
burden of proof of such fact is, of course, upon the defend-
ants.   No witness testified that the fact was ever communi-
cated to any of the plaintiff's officers.   On the other hand, the
defendant *Anton Reif,* the president and general manager of
the corporation, testifies that he has no recollection of ever
writing the plaintiff anything about the relations between the
defendants and the new corporation.   The executive officers
of the plaintiff testify positively that they never had any
knowledge of any agreement of assumption, and never con-
sented to make, nor were asked to make, any substitution of
debtors.   It is true that there was considerable correspondence
carried on by the plaintiff with the Reif Lumber & Manu-
facturing Company (which was the name of the new corpora-
tion) as to the payment of the note; and it is also true the
plaintiff's officers knew that some organization under this
name was operating the mill, and that in February, 1897, the
plaintiff agreed to accept lumber from this organization in
discharge of the balance due.   It is also true that the plaintiff
proved the note as a claim against the corporation in the as-
signment proceedings.   These facts seem to be relied upon as
showing knowledge of the assumption of the debt by the cor-

poration.   They are quite reasonably explained, however, by the plaintiff's officers, as simply resulting from the fact that the concern styling itself as the Reif Lumber & Manufacturing Company was running the business, and was willing to discharge the debt, and that the plaintiff was perfectly willing that they should do so.   None of the facts are necessarily inconsistent with entire ignorance of the situation of the contract relations between the defendants and the company or association so styled.   While these facts may have some tendency to prove knowledge of the fact of the assumption, they are entirely insufficient to justify a verdict to that effect, when standing alone, and met by absolute denials by the officers of the plaintiff of any such knowledge.   The findings of the jury, therefore, which find that such knowledge in fact existed, and that there was an agreement for substitution of debtors, were not sustained by the evidence, and should have been set aside.

While the exceptions reserved upon the trial and urged in this court were very numerous, and have not been treated in detail, it is believed that the foregoing general remarks are entirely sufficient to cover all the material questions presented on the appeal.

*By the Court.*—Judgment reversed and action remanded for a new trial.