RAISSL, Respondent, vs. LOSKOT, Appellant.

*May 12—June 21, 1926.*

*Novation: How proved: Inferred from circumstances.*

1. A substitution of debtors, with the consent of all parties concerned, need not be shown by express language, but can be inferred from circumstances.  p. 510.
2. A transaction whereby the payee of a note returned it to the maker and took another note from the maker's son, who subsequently paid interest thereon, is *held* to be a complete novation.  p. 511.

    CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

The evidence in this case is substantially undisputed.  In 1917 the defendant executed to the plaintiff his promissory note for the sum of $1,000 for a valuable consideration, payable in five years, with interest.  In May, 1919, the defendant, being then the owner of a farm of eighty acres in Marathon county and certain personal property situated thereon, conveyed to his son, Joe Loskot, Jr., said farm, together with the personal property, for the sum of $12,250, and the latter, in consideration of such transfer, gave the father (the defendant herein) a note for the full consideration and a mortgage upon the farm to secure the payment of the note.  In October of the same year the plaintiff learned of the transfer of said farm by the defendant to his son, and on the 3d day of that month the plaintiff and the defendant and his son met at the Bank of Edgar, plaintiff being under the impression that, in view of the transfer above mentioned, arrangements would be made for the payment of his note.  Both of the parties hereto are Bohemians and have but a limited command of the English language, and, evidently for that reason, the actual conversation which took place at that time appears rather scantily

and unsatisfactorily. It does, however, appear that their ability to speak the English language is about on a par one with the other. Among other things the plaintiff testified as follows:

"I saw them going to the bank. I heard from people he sold the farm for $11,000 and thought I was going to get my money. I did not ask the boy to give me a note. Father and son were right in the bank with me. They went in first. No one asked me to go in, but I did so, it will be straightened up. I heard he sold the farm, that this money is on the farm so might just as well stay there again. That is the old gentleman told me. The son says, 'I will give you the note on this money.' The father said nothing. I trust him, he was honest so I gave him the note back."

The testimony of the defendant, in substance, is in harmony, as to what transpired at the bank, with that of the plaintiff. It appears beyond dispute that either at that time or immediately thereafter the plaintiff surrendered to the defendant the latter's note, which the defendant subsequently destroyed. From October, 1919, until October, 1922, the plaintiff looked to the defendant's son for the payment of the interest upon the note, and such interest was paid by the son.

The son operated the farm until the year 1922, and during such time became so heavily involved financially that both the defendant and his son realized that the latter could not continue in his operations, so that the son concluded, on February 15, 1922, to reconvey the farm and the personal property thereon to the defendant and his wife, which was done, the mortgage of the son upon such transfer being fully satisfied of record. Upon the transfer last above referred to the son disappeared, so that at the time of the trial his whereabouts was unknown. Plaintiff thereupon commenced this action to recover from the defendant the sum of $1,000, together with the unpaid interest thereon.

In substance the court found that the transaction above referred to did not result in a novation; that the son's note to the plaintiff was executed without consideration; that there was no consideration for the surrender and delivery of defendant's note by the plaintiff to him; and that there was no consideration as between the defendant and his son for the assumption by the son of the payment of defendant's note to the plaintiff. Judgment was thereupon ordered in plaintiff's favor against the defendant for the full amount of the principal indebtedness, with interest; and, judgment having been entered accordingly, the defendant has prosecuted this appeal.

For the appellant the cause was submitted on the brief of *Bird, Okoneski & Puchner* of Wausau.

For the respondent there was a brief by *Smith & Bachhuber* of Wausau, and oral argument by *Brayton E. Smith*.

DOERFLER, J. From the testimony of the plaintiff heretofore quoted it appears clearly that when he went to the bank on October 3, 1919, he had information of the sale of defendant's farm to his son; that he expected either that his note would be paid or that some new arrangements would be made with respect to the same. It is also clear that when the plaintiff testified that the defendant told him at the bank that "this money is on the farm, so might just as well stay there again," that he intended thereby to express the view that the one who owned the farm should pay the amount of the defendant's note. The quotation immediately preceding was understood by the son to mean precisely as we have here interpreted it, for in reply to the defendant's suggestion the son said "I will give you the note on this money." To this reply of the son, according to plaintiff's testimony, the father said nothing. His failure to speak at that time was an indication either that he was satisfied with the proposed arrangement and consented thereto, or

that it was not necessary for him to further express himself upon the subject because he had already previously done so.

The plaintiff clearly manifested his intention of accepting the son as his debtor and to substitute him as such in place of the defendant. He had two notes in his possession: one from the defendant and the other from the latter's son. Had he retained both notes it might readily be inferred that he took and held the son's note as additional collateral. But this was not plaintiff's understanding. He realized fully what evidently was in the minds of all the parties, that because the son had become the owner of the property he should also assume the indebtedness of the father to the plaintiff. With these facts clearly in mind the plaintiff surrendered defendant's note to him, and the latter, evidently being satisfied that his obligation had been released and discharged, destroyed the note. Under these circumstances the question arises, Was a novation effected?

Whether the note of the son afforded better security than the original note is entirely immaterial. That it did afford him better protection was the conviction of the plaintiff, for he accepted the new note of the new debtor in place of the old note and the old debtor. That there was a substitution of debtors, with the consent of all parties concerned, need not be shown by express language in that regard. It can be inferred from circumstances; and as said in the case of *T. W. Stevenson Co. v. Peterson,* 163 Wis. 258, 157 N. W. 750, "It is not necessary to a substitution of debtors that the assent of the creditor to take a new debtor in place of the old one should be given by any writing or by express words. The fact is the vital thing. If that appears clearly by circumstances and the other essentials also appear, they establish a novation." In fact, the assent of the creditor in many instances may appear more strongly from the facts and circumstances in the case than from written words or oral language. According to the testimony

of the plaintiff, this substitution of debtors was suggested by the defendant. That being the case, it follows by necessary implication that in consideration of the assumption by the son of the defendant's obligation, the defendant, who was a creditor of the son, would either pay him for such assumption, or allow him for the same upon the son's indebtedness to him. It is difficult to conceive of a stronger situation where the facts and circumstances more conclusively point to a complete novation than that presented in the instant case. There was a valid, subsisting, and *bona fide* consideration moving to each party. In *Fidelity Ins., T. & S. D. Co. v. Shenandoah Valley R. Co.* (86 Va. 1, 9 S. E. 759), 19 Am. St. Rep. 858, on page 859, it is said (syllabus) :

"Whether a transaction amounts to a novation or not is a question of intention, to be decided from all the circumstances of the case, although nothing positive be expressed. The giving up of a security or an evidence of indebtedness, when accepting another, is a decisive circumstance in determining whether or not the security or evidence of indebtedness so accepted was received in payment or only as additional security."

In 20 Ruling Case Law, 364, it is said:

"In the absence of proof of a special agreement, the giving up or the retention of the original security will, in general, be a decisive circumstance in determining that question; for if the creditor means, in any contingency, to resort to the original indebtedness, he will scarcely be willing to surrender all evidence of that indebtedness to his debtor without fortifying himself with some acknowledgment of the real nature of the transaction."

See, also, 20 Ruling Case Law, 366–369, 371, 372; *T. W. Stevenson Co. v. Peterson,* 163 Wis. 258, 157 N. W. 750; *Hedstrom v. Schaumann,* 174 Wis. 354, 357, 183 N. W. 968; *Hemenway v. Beecher,* 139 Wis. 399, 121 N. W. 150.

We therefore conclude that there was a complete nova-

tion; that the indebtedness of the defendant to the plaintiff was canceled; that the plaintiff for a valuable consideration accepted the note of the son; and that the defendant, by necessary implication, agreed to either pay the amount of the note to his son or make him an allowance therefor upon the indebtedness of the son to the defendant.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.

CROWNHART, J. (*dissenting*).    I cannot concur in the opinion of the court which results in depriving the plaintiff, eighty years old when the transaction occurred and unacquainted with the subtleties of the law, of his property. It is useless to discuss the law of novation, because it is admitted in the opinion of the court that novation is a matter of concurring intention of three or more parties to the agreement.    The question of intent is a question of fact, to be found by the trial court or a jury.    This case was tried by the court, and on the question of intent he found the facts against the contention of the appellant.    Unless the evidence is clear to the contrary, his findings of fact should not be disturbed.

Again, the statement of facts by this court says:

"Both of the parties hereto are Bohemians and have but a limited command of the English language, and, evidently for that reason, the actual conversation which took place at that time appears rather scantily and unsatisfactorily."

It is from that conversation that the intent is to be found. The trial court saw and heard the witnesses and was far better able to understand the situation than is this court. This is peculiarly a case where great weight should be given to the findings of the able and experienced trial judge.    He rendered a very clear and lucid opinion, supported by abun-

dant authority, in which he held the appellant indebted to the respondent in the amount claimed. There is no claim that appellant did not borrow the money; there is no claim that he repaid it; there is no claim that the son paid it; and there is no claim that any consideration passed from the appellant to his son to induce the son to assume the debt.

But the law, as interpreted by the court, is made an instrument of injustice, whereby this eighty-year-old man is found to have intended to cheat himself out of his thousand-dollar loan to the appellant.

I agree with the trial court, both in his findings of fact and conclusions of law.