BANSCHBACH, Respondent, vs. MEUER and another, Appellants.

*March 10—April 15, 1941.*

456

For the appellants there was a brief by *Sauthoff, Hansen, O'Brien & Kroncke* of Madison, and oral argument by *A. E. O'Brien.*

*Alton S. Heassler,* attorney, and *Ralph E. Axley* of counsel, both of Madison, for the respondent.

MARTIN, J. The plaintiff demurred to the separate defenses pleaded in the answer, and also demurred to the answer as a whole. These demurrers reach back so that the sufficiency of the substance of the complaint can be determined. *Stephens v. Wheeler,* 193 Wis. 164, 171, 213 N. W. 464, and cases cited.

Does the complaint state a cause of action? It in substance alleges that prior to January 8, 1929, the plaintiff conceived, designed, and patented a safety barrier or gate for use at railroad crossings on highways, the purpose of which is to safely arrest vehicles of all sizes at high speeds without damage to the vehicles or injury to the occupants; that on or about June 12, 1937, plaintiff entered into a written contract with defendants, by the terms of which, among other things, the plaintiff assigned, transferred, and set over to the defendants, and each of them, an undivided one-third interest in the exclusive right and license during the life of the patent to manufacture and sell such safety gates and products appertaining to said patent, and the defendants expressly agreed by the terms of said contract to pay to the plaintiff the sum of $25 per week each and every week from the date of a certain corporation to be organized by the parties, which corporation was organized on October 15, 1937; that pursuant to said agreement defendants have paid the plaintiff the sum of $505; that there is now due and owing plaintiff on said contract from defendants the sum of $1,545. A copy of the written contract is attached to the complaint and made a part of it. It is further alleged that defendants have refused to make any payments under the contract since July 30, 1938. The prayer

of the complaint is for judgment against defendants for the sum of $1,545 with interest and costs.

The written contract between the parties, in which plaintiff is the party of the first part and defendants are the parties of the second part, so far as here material, provides:

"That in consideration of one dollar ($1) in hand paid by each of the parties to the other, the receipt of which is hereby acknowledged, and in further consideration of the agreement to furnish and provide for all necessary and required capital funds and credit by the said parties of the second part for filling and completing all orders solicited and received, and for carrying on and promoting the building, manufacture and sale of all safety gates pursuant to and according to the provisions and purposes of said patent; that said party of the first part hereby grants to the parties of the second part, John Urban Meuer and Albert N. Besnah, individually, each for his own use, his successors and assigns, an undivided one-third (⅓) interest of the exclusive right and license, during the life of said patent and any extensions, improvements and discoveries thereof, to manufacture and sell any and all safety gates and products in any way appertaining to said patent, including all drawings and specifications now in possession of said party of the first part. That in further consideration of the agreements herein by both parties, the said party of the first part hereby sells, transfers and conveys to the parties of the second part, individually, each for his own use and his legal representatives, an undivided one per cent (1%) interest of the right and title in and to the letters patent thereof aforesaid, to the full end of the term for which said letters patent are granted, as fully and entirely as the same would have been held by the party of the first part, had this sale and conveyance not been made, including any and all improvements, further inventions or discoveries which said party of the first part may make, come upon, invent, discover or otherwise acquire with reference to the said patent, which shall become subject to the terms of this agreement in the same manner as herein provided relative to the original patent."

The agreement further provides that plaintiff will be paid a royalty of three per cent of the gross sale price received from

the manufacture and sale of the safety gates described in the patent, and that both plaintiff and defendants, as individuals, are to receive a commission of five per cent on all safety-gate sales personally made, solicited, and sold. The contract further provides:

"It is further agreed and understood between the parties hereto that the party of the first part shall receive a drawing account in the amount of twenty-five ($25) dollars per week, commencing on the date of the incorporation, hereinafter referred to, and after the first safety gate is sold and paid for, the party of the first part shall receive a drawing account of sixty ($60) dollars per week, all of such advances to be charged and deducted from royalties, commissions or dividends that may be declared by the corporation, representing his interest therein."

The plaintiff contends that this contract imposes a personal liability on defendants for payment of the $25 per week drawing account from the date of the organization of the corporation (October 15, 1937) to the time of the commencement of this action. Whether the provisions of the contract impose a direct personal obligation on defendants or whether they be held as guarantors of the payment need not now be decided. The immediate question is, Does the complaint state a cause of action against defendants? We must hold that it does.

The first defense is a plea in abatement in which is alleged the contract between the parties, to which reference is made in the complaint. It is further alleged that on October 30, 1937, the parties entered into a further contract pursuant to which they assigned to the corporation all of the rights or benefits each of said parties had by reason of their contract of June 12, 1937. It is further alleged that in exchange for the rights and benefits assigned to the corporation, the corporation issued fifty shares of its common capital stock to each of the parties; that after the corporation was organized, the plaintiff and defendants were elected as directors and officers at its

initial meeting; that by agreement of all parties the plaintiff's drawing account in the sum of $25 per week as advances, was entered upon the books of the corporation, and that thereafter plaintiff was paid his weekly drawing account by the corporation from moneys advanced by defendants as officers and directors of the corporation.

Defendants contend that by reason of the facts alleged there occurred a complete novation which was accepted by the plaintiff, and that they were released from all liability under the agreement of June 12, 1937.

"The essentials of a novation are a mutual agreement between a debtor, his creditor, and a third person by which such third person agrees to be substituted for such debtor and the creditor assents thereto, extinguishing the obligation of such debtor to such creditor and creating one in place thereof of such third person to such creditor."

"It is not necessary to a substitution of debtors that the assent of the creditor to take a new debtor in place of the old one should be given by any writing or by express words. The fact is the vital thing. If that appears clearly by circumstances and the other essentials also appear, they establish a novation." *T. W. Stevenson Co. v. Peterson,* 163 Wis. 258, 261, 157 N. W. 750; *Hedstrom v. Schaumann,* 174 Wis. 354, 357, 183 N. W. 968; *Raissl v. Loskot,* 190 Wis. 507, 510, 511, 209 N. W. 689.

We are of the view that the plea in abatement presented an issue of fact as to whether there was a novation by reason of which defendants were released from personal liability. The allegations of the plea may be somewhat indefinite, but the plaintiff's consent thereto need not be in writing, it may be shown by parol or circumstances and the conduct of the parties. *Hedstrom v. Schaumann, supra.* We must hold that the court erred in striking from defendants' answer their plea in abatement.

Defendants contend that the corporation is the real party in interest and that it must be joined as a party. Their argument in support of this contention is that if they be held liable,

they will have a right of reimbursement against the corporation. Sec. 260.19 (3), Stats., covers the situation. It provides:

"(3) A defendant, who if he be held liable in the action, will thereby obtain a right of action against a person not a party may apply for an order making such person a party defendant and the court may so order."

So far as the record discloses, defendants have made no move in the trial court to have the corporation made a party to the action. When the record is returned to the trial court, they may so move if they wish.

Defendants' counterclaim is based upon alleged fraudulent representations made to them by the plaintiff concerning the barrier or gate on which he had a patent. The counterclaim by reference incorporates the contract of June 12, 1937, and the contract of October 30, 1937. The specific allegation of fraud is as follows:

"That at the time and after the execution of the contract [of June 12, 1937] plaintiff falsely and fraudulently represented to these answering defendants that he was the owner of a certain safety barrier or gate for use at railroad crossings on highways which was in good workable condition and entirely suitable for the purpose of making tests thereon and of demonstrating the same to prospective purchasers of said device; that thereafter, and before the formation of the corporation hereinbefore mentioned, these answering defendants ascertained the plaintiff was not the owner of said device and that the device which he had pointed out to them was unable to be used for tests or demonstrations for the reasons that the said device could not be obtained by these defendants from the true owner for tests or demonstration purposes and for the further reason that said device was mechanically defective."

It is further alleged:

"That as a result of being unable to obtain the safety gate which plaintiff represented to be his, for testing and demonstration purposes, both because of plaintiff's lack of ownership

thereof and because of its defective mechanical condition, these defendants were forced to expend large sums of money for investigation in order to determine the true facts relative to said device, to their damage;

"That because of plaintiff's misrepresentation of the ownership of said device these defendants advanced large sums of money to the plaintiff for his personal needs and for traveling expenses to obtain prospective customers to view said device although plaintiff well knew that he was not the owner thereof and that the same was not in workable mechanical condition, all to defendant's damage;

"That because of plaintiff's misrepresentation as to the mechanical condition of said device, these defendants, upon becoming aware of the true condition of said device, were forced to expend large sums of money in consulting engineers as to ways and means for obtaining a similar device, in proper workable condition, which might be used to demonstrate to prospective customers, to their damage."

It should be noted that the contract of June 12, 1937, required defendants to furnish and provide all necessary and required capital funds in consideration of which the plaintiff conveyed to each of the defendants an undivided one-third interest "of the exclusive right and license, during the life of said patent and any extensions, improvements and discoveries thereof, to manufacture and sell any and all safety gates and products in any way appertaining to said patent, including all drawings and specifications now in possession of said [plaintiff] party of the first part." The gate or barrier in question was a product of the plaintiff's patent in which he conveyed an interest to the defendants. The plaintiff's representation as to his ownership of this gate or barrier which was to be used for demonstration purposes, and so represented to the defendants, was a misrepresentation of a material fact. It is alleged in defendants' counterclaim that because of plaintiff's representation of ownership, defendants advanced large sums of money to plaintiff for personal needs and for traveling expenses to obtain prospective customers. We think this is

a sufficient allegation of reliance on plaintiff's representation of ownership. As against the plaintiff's demurrer to the counterclaim, we must accord the pleadings a liberal construction. Of course, it is elementary that a demurrer to a pleading admits all material facts properly pleaded.

In *Woteshek v. Neuman*, 151 Wis. 365, 369, 138 N. W. 1000, the court said:

"It is not necessary in all cases of fraud that the deception should have been by means of any trick or artifice. A plain, unvarnished falsehood relative to a material fact is often sufficient. The complaint states a good cause of action. It alleges that the defendant made representations relative to a material fact which were not true, and which were or ought to have been known by the defendant at the time they were made to be untrue; that the plaintiff was ignorant of their falsity and believed them to be true, and that, acting in reliance thereon, he was damaged. Such allegations sustain an action for fraud." Citing *Helberg v. Hosmer*, 143 Wis. 620, 128 N. W. 439.

In *Angers v. Sabatinelli*, 235 Wis. 422, 440, 293 N. W. 173, the alleged fraudulent representation was that defendant knowingly and fraudulently represented to the plaintiff that there were no liens against the property other than a certain mortgage in the sum of $5,000, whereas in fact, there was a further lien in the sum of $5,822.37. Plaintiff alleged that on the date of the transfer to him he was not aware of the lien of the United States government. It further appears that plaintiff took title to the property in question by quitclaim deed, which is stated in the complaint to have been "subject to mortgages and liens of record." Defendant contended that because the government lien was recorded, plaintiff was not entitled to rely upon any representations as to the recorded liens. The court said:

"This point was decided adversely to defendant's contention in *Woteshek v. Neuman*, 151 Wis. 365, 138 N. W. 1000, in which this court held that a vendee was entitled to rely upon

positive assertions by the vendor concerning facts which were matters of record." Citing 33 A. L. R. 853, and Restatement, Torts, § 540.

In *Helberg v. Hosmer, supra,* at page 623, the court said:

"When a party, either knowingly or without knowledge on the subject, makes material and false representations of fact to another in order to induce him to enter into a contract, and such other without knowledge or the present means of knowledge on the subject is thereby induced to enter into the contract in reliance on the truth of the representations and suffers legal damage by reason thereof, the cause of action is complete."

We conclude that the counterclaim states a cause of action, and that the trial court erred in sustaining the plaintiff's demurrer thereto.

From what has been said with reference to the plaintiff's motion to strike the plea in abatement and to his demurrers to the plea in abatement and to the counterclaim, there is no occasion to discuss the plaintiff's demurrer to the answer as a whole.

*By the Court.*—The order striking the plea in abatement and sustaining the several demurrers is reversed, and cause remanded for further proceedings according to law.