NAVINE and wife, Respondents, v. PELTIER and wife, Appellants.

*No. 220. Argued October 8, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 613.)

590

For the appellants there was a brief by *Becker & Stein* and *Martin R. Stein,* all of Milwaukee, and oral argument by *Martin R. Stein.*

For the respondents there was a brief by *Herro, Snyder & Chapman* and *Charles J. Herro,* all of Oconomowoc, and oral argument by *Charles J. Herro.*

BEILFUSS, J. The issue presented on this appeal is whether the actions of the parties constituted a novation whereby Thomas Peltier and his wife were relieved of liability on the promissory note dated May 26, 1965.

It is clearly established that the Peltiers and the Hallorans were joint obligors on a promissory note to the respondents and that the note had not been paid. However, appellants-Peltiers contend that they were relieved of their obligation to the Navines by virtue of a novation by which the Hallorans became solely liable on the note.

In *T. W. Stevenson Co. v. Peterson* (1916), 163 Wis. 258, 261, 157 N. W. 750, this court discussed the requirements for a novation and said:

"The essentials of a novation are a mutual agreement between a debtor, his creditor, and a third person by which such third person agrees to be substituted for such debtor and the creditor assents thereto, extinguishing the obligation of such debtor to such creditor and creating

one in place thereof of such third person to such creditor. *Hemenway v. Beecher,* 139 Wis. 399, 121 N. W. 150."

It is respondents' contention that a novation here is impossible by definition since it requires that a third person be substituted for the original debtor. They argue that since the Hallorans were co-obligors on the note there was no substitution of debtors and therefore no novation.

This argument is supported by Restatement, 2 *Contracts,* p. 798, sec. 424, which reads in part:

"A novation within the meaning of the Restatement of this Subject is a contract that

". . .

"(c) includes as a party one who neither owed the previous duty nor was entitled to its performance."

The Restatement definition is in accord with the common-law definition which required the substitution of one debtor for another. But as generally applied in modern practice, a new obligation of the original debtor may be accepted in discharge of the original obligation, and in this case there would not be any substitution of parties.

39 Am. Jur., *Novation,* p. 255, sec. 2, states:

". . . A novation, then, as understood in modern law, is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution of a new creditor."

Also, 66 C. J. S., *Novation,* p. 689, sec. 9, states:

"A novation by substitution of an obligation occurs where a creditor accepts from his debtor any form of new agreement in place of a prior contract or obligation between them, with the intent to cancel the former and to substitute the new one therefor." *Also, see* sec. 8b, p. 689.

The early Wisconsin cases cited by both parties are in accord with the common-law definition in stressing the

element of a substitution of parties. *See T. W. Stevenson Co. v. Peterson, supra; Bohn Mfg. Co. v. Reif* (1903), 116 Wis. 471, 93 N. W. 466. But the more recent cases which have made reference to novation have stressed not so much the need for a substitution of parties, but rather the substitution of a new debt.

". . . Under the law of this state there is no novation unless the original indebtedness is extinguished by the substitution of a new debt. In this state that does not take place unless there is an express agreement to that effect." *In re Beaver Drainage District* (1944), 244 Wis. 603, 614, 13 N. W. 2d 76, 14 N. W. 2d 181.

Also:

". . . A novation contemplates a substitution of a new contract for a previous one, and this is simply not consistent with the facts of the instant case. . . ." *State Medical Society v. Associated Hospital Service* (1964), 23 Wis. 2d 482, 490, 128 N. W. 2d 43.

Although both of these quotations are taken from context in cases where the court rejected the contention that a novation had occurred between parties to an agreement, they do indicate that this state is in accord with the modern position and recognizes a novation by substitution of obligations between the same parties as well as by substitution of parties.

With this established, two questions are presented. First, did the evidence clearly show consent by the respondents, Navines, to a substitution of obligations between the parties and, secondly, was there sufficient consideration to support a new obligation.

It is conceded that the Navines never expressly agreed to the substitution of the Hallorans alone as obligors on the debt. However, an express agreement is not necessary. In *Bishop-Babcock-Becker Co. v. Keeley* (1915), 160 Wis. 546, 548, 152 N. W. 189, the court said:

". . . It is not required that acceptance of the terms of novation be shown by express words, but it may be im-

plied from the facts and circumstances of the transaction and the conduct of the parties in relation thereto. . . ." *Also see: T. W. Stevenson Co. v. Peterson, supra; Raissl v. Loskot* (1926), 190 Wis. 507, 209 N. W. 689.

If the express agreement requirement of *In re Beaver Drainage District, supra,* is contrary to the rule just quoted, it is overruled and withdrawn.

Appellants-Peltiers argue that prior to the meeting at Halloran's office in March or April of 1966, respondents had made repeated demands on them for payment of the note, but that subsequent to that meeting, at which assumption of the debt by the Hallorans was discussed, no further demands were made on them. The next contact between appellants and respondents was in August, 1967, when payment was demanded of appellants after Halloran had filed for bankruptcy. Further, when Navine executed the subordination agreement in September, 1966, he knew that the Peltiers were not parties to the new mortgage and that they no longer had any interest in the real estate. Appellants-Peltiers maintain that these factors point conclusively to the fact that Navine knew of and consented to the assumption of the entire obligation by the Hallorans.

Respondent-Navine testified that all of his initial demands for payment were made upon appellant at his home because appellant was the person with whom he had had contact during the negotiations and that subsequent demands were made at Halloran's office because of Peltier's request. He further testified that it was his understanding that appellant would not be at some of the meetings because of his business. He also admits knowing that appellants were not parties to the new mortgage when he executed the subordination agreement, but states that he signed it so that the note he held could be paid in full as a result of this refinancing. He testified that there was no significant difference in the discussions at Halloran's office when appellant was there and when

he was not there, and that he never relieved the appellants of their obligation on the note.

What took place at that meeting sometime during March or April of 1966, at which the termination of the appellants' and the Hallorans' relationship was discussed, and whether respondents' subsequent actions indicated consent to a novation, were both questions of fact for the trial court. The standard of review of its findings where trial was not before a jury was set forth in *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212, as follows:

"Since the trial court tried the case without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence and it is not necessary the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient that there is evidence to support a contrary finding. To command a reversal, such evidence although sufficient to support a verdict must constitute the great weight and clear preponderance of the evidence. [Citations omitted.]"

The trial court found:

"5. That in no way did that certain transaction between the Hallorans and the Peltiers eliminate the basic obligation of the Peltiers under the provisions of said note."

The Peltiers argue that Navine's failure to make demands for payment on them personally indicates their assent to a new obligation on which only the Hallorans were liable. Respondent-Navine says that he continued to make his demands at Halloran's office pursuant to appellants' request prior to the transaction between appellants and the Hallorans. Appellants-Peltiers argue that there was a specific discussion concerning relieving them of liability on the note and accepting the Hallorans alone as obligors. Respondent-Navine testified that he did not remember any such conversation and that he

never agreed to relieve them. Appellants stress the significance of the subordination agreement as an indication that respondents were looking only to the Hallorans as their obligors. Respondents say that they signed it only to facilitate refinancing and payment of the note.

While the trial court might have found that these actions indicated consent on the Navines' part, with sufficient supporting evidence, the findings that it did make were clearly not against the great weight and clear preponderance of the evidence presented.

We further conclude that there was no consideration sufficient to support a substitution of obligations and a release of the Peltiers. While an agreement to take a substituted note as absolute payment of an original note may operate as an extinguishment of the earlier indebtedness and effect a novation, there was nothing of the kind here. Respondents continued to hold the same note upon which appellants and the Hallorans were joint obligors, and the assumption of that joint debt by one of them, with an agreement to hold the other harmless, does not change the relationship between the latter and the creditor without his consent and sufficient consideration to support that consent. *First National Bank of Milwaukee v. Finck* (1898), 100 Wis. 446, 76 N. W. 608. *Also see: Marshall Field & Co. v. Fishkin* (1923), 180 Wis. 149, 192 N. W. 463.

*By the Court.*—Judgment affirmed.