FRIEDRICH and another, Appellants, vs. ZIMMERMAN, Secretary of State, and another, Respondents.

*April 15—June 12, 1941.*

For the appellants there was a brief by *Joseph E. Tierney, Sr.,* attorney, and *Joseph E. Tierney, Jr.,* of counsel, both of Milwaukee, and oral argument by *Joseph E. Tierney, Sr.*

For the respondents there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *N. S. Boardman,* assistant attorney general, and oral argument by *Mr. Boardman.*

MARTIN, J. Plaintiffs' case stands or falls upon the proposition whether the motor-vehicle registration fees, the operators' license fees, and the motor-vehicle fuel taxes, when paid into the general funds of the state, constitute trust moneys. Sec. 14.68 (1), Stats., provides:

"Unless otherwise provided by law, all moneys collected or received by each and every officer, board, commission, society, or association for or in behalf of the state, or which is required by law to be turned into the state treasury, shall be deposited in or transmitted to the state treasury at least once a week and also whenever required by the governor, and shall be accompanied by a statement in such form as the treasurer may prescribe showing the amount of such collection, and from whom and for what purpose or on what account the same was received. *All moneys paid into the treasury shall be credited to the general fund unless otherwise specifically provided by law.*"

Sec. 25.20, Stats., provides that all moneys in the state treasury not specifically designated in any statute as belonging to any other fund, constitute the general fund. Motor-vehicle fuel taxes are levied under sec. 78.02. Registration fees and operators' license fees are provided by secs. 85.01 and 85.08. There is no provision in the statutes for paying these revenues into any fund other than the general fund. Appropriations to the state highway commission are made from the general fund under sec. 20.49, which, so far as here material, provides:

"There is appropriated from the general fund to the state highway commission on the allotment date specified in this section the aggregate amount not previously allotted of the surplus of the motor-vehicle registration fees, operator's license fees and motor-vehicle fuel taxes, after deducting the appropriations made by subsections (4) and (9) of section 20.05 and subsection (1) of section 20.051, provided that the taxes on motor-vehicle fuel used or sold in June may with the consent of the emergency board be included in the allotments on July first. . . ."

Sec. 20.05 (4), Stats., which makes an appropriation to the state treasury to pay the expense of administering the motor-vehicle tax law imposed by ch. 78 of the statutes, in part provides:

"All moneys received by the state treasurer under chapter 78 shall be paid within one week after receipt into the general fund."

Had the legislature intended that the revenues received from the motor-vehicle registration fees, operators' license fees, and motor-vehicle fuel taxes should constitute a trust fund, no doubt it would have so provided. In this connection it is important to note that in several of the recent sessions of the legislature, bills were introduced to segregate the sources of revenues, all of which have failed of passage. Such bills were Bills No. 24, A., and No. 4, S., of the session of 1939, Bills No. 62, S., and No. 214, A., of the session of 1937, and Bill No. 559, S., of the session of 1935. These bills were designed to create a "highway fund" into which motor-vehicle registration fees, motor-vehicle fuel taxes, and operators' license fees would have to be placed within a fixed time after receipt in the treasury, or creating a "highway fund" into which appropriations, under sec. 20.49, Stats., would be set aside and the appropriation thus segregated from the general fund.

Ch. 25, Stats., provides for trust funds and their management. These funds are the moneys belonging to the common-school fund, the normal-school fund, the university fund, the agricultural-college fund, drainage fund under ch. 537, Laws of 1865, teachers' retirement fund, soldiers' rehabilitation fund, conservation fund, reforestation fund, and a benevolent fund.

The highway department, like all other departments of state government, exclusive of the legislature and the courts, is required to submit quarterly estimates with respect to the needs of its department. It operates under the budget system as provided in ch. 15, Stats. Sec. 15.14, Stats., provides:

"*Departmental estimates.* (1) *Made quarterly.* Each department except the legislature and the courts shall from

time to time prepare and submit to the director of the budget an estimate of the amount of money which it proposes to expend upon each of its divisions, activities and functions during the ensuing quarter. Such estimates shall be prepared in such form as the director of the budget may require. Revised and supplemental estimates may be presented at any time as occasion thereof may arise, under rules to be prescribed by the director of the budget."

Sec. 15.01 (1), Stats., creates the state budget bureau. Sub. (4) defines the word "department" as follows:

"Whenever in this chapter [ch. 15] or in sections 20.74 and 20.77 the word 'department' is used, it shall be construed to include all state departments, boards and commissions, and all state educational, charitable, correctional and other institutions, and all societies and associations to which section 20.78 of the statutes is applicable."

Sec. 15.14 (4), Stats., provides for appeals to the governor from the decisions of the director of the budget. It provides:

"Any department feeling itself aggrieved by the refusal of the director of the budget to approve any estimate, or any item therein, may appeal from his decision to the governor, who, after a hearing and such investigation as he deems necessary, may set aside or modify such decision."

The appropriation made to the state highway commission under sec. 20.49, Stats., is no different from any other appropriation under ch. 20, whereby moneys are appropriated from the general fund to the several bureaus, boards, commissions, officers, and other agencies for public purposes. No specific moneys are appropriated. The appropriation is measured by the aggregate amount "not previously allotted of the surplus of the motor-vehicle registration fees, operators' license fees, and motor-vehicle fuel taxes, after deducting the appropriations made by subs. (4) and (9) of sec. 20.05 and sub. (1) of sec. 20.051, provided that the taxes

on motor-vehicle fuel used or sold in June may with the consent of the emergency board be included in the allotments on July first." Plaintiffs argue that there is no similar appropriation statute measuring the appropriation by the amount of particular receipts, from which they conclude that the legislature intended to trustee such receipts. This contention is without merit. There are a great many such appropriations made from the general fund of particular revenues, receipts, or services. See secs. 20.03 (6) (a), (b); 20.03 (7) (d); 20.05 (2); 20.051 (2), (3); 20.056 (2); 20.07 (5); 20.09 (3); 20.095 (3); 20.10 (2), (7); 20.12 (2), (3), (6); 20.145; 20.16 (1) (g); 20.17 (1) (ab), (c), (cc), (e), (8) (b), (9), (11), (12), (12b), (15), (18), (25); 20.18 (1), (2) (a), (b), (4), (5), (6); 20.33 (6), (8), (9); 20.34 (4), (5); 20.38 (12), (13); 20.41 (1) (e), (h), (i), (k), (2) (ab), (c), (3) (k), (5) (a), (c), (d), (8), (10) (a), (11) (a); 20.43 (8), (21); 20.435; 20.44; 20.45; 20.46; 20.47; 20.475; 20.51 (4); 20.52; 20.53 (1); 20.535; 20.54; 20.55 (3); 20.57 (2), (4), (7), (8); 20.575 (2); 20.595 (1); 20.60 (6) (b); 20.725 (2).

From figures tabulated in the pleadings, counsel apparently agree that if the three sources of revenue, that is, gasoline taxes, motor-vehicle registration fees, and operators' license fees, were to be segregated from the general fund and trusteed to the highway fund, upon receipt in the treasury, that with the exception of one quarter period, namely, March, 1933, there would have been no money in the general fund since March, 1932, with which to carry on the ordinary and essential functions of government, exclusive of highways. Counsel appear to be further agreed that over a ten-year period, the legislature has failed by some $27,000,000 to provide sufficient revenues with which to carry on the ordinary and essential functions of government, exclusive of

highways, and for which, appropriations have likewise been made out of the general fund of the state. Of course the legislature makes its appropriations on the basis of anticipated revenues. When the revenues do not come in, the general fund will be short to the extent of the difference between the amount appropriated and the amount of revenues received. That does not spell a diversion. If the revenues received belong to the general fund and are not impressed with a trust for the exclusive use of the state highway commission, money so received from the three sources indicated and placed in the general fund of the treasury, may lawfully be used to carry on the ordinary and essential functions of the state government and such use does not constitute a diversion.

Plaintiffs in the instant action seek to have this court declare a trust in moneys in the general fund where the legislature has failed to provide any such trust. It would have been a very simple procedure for the legislature to have provided for payment of the moneys, received from the sources indicated, into a special or trust fund, or to have provided that the appropriated moneys, under sec. 20.49, Stats., be paid into a special or trust fund if it so desired. The courts have no power to legislate.

The legislature, by joint resolution No. 32 of the session of 1939, initiated a proposed amendment to the state constitution relating to the appropriation and expenditure of all related highway funds, in which it is proposed that all motor-vehicle registration fees, licenses, motor-vehicle fuel taxes, and all other similar special taxes, duties, or excises thereafter collected on all kinds of motor vehicles, trailers, motor-vehicle fuel, on motor-vehicle owners or operators, shall constitute a separate fund and shall, after providing therefrom for the necessary costs of administration, auto licenses, and motor-vehicle fuel refunds and highway privilege taxes, be

appropriated and used only for highway purposes, etc. Apparently the legislature of 1939 preferred to pass the decision on this highly controversial question to the next legislature and to the people and let them determine by way of voting upon a constitutional amendment, whether they want these sources of revenue trusteed or segregated upon receipt in the treasury. Until the question is settled either by act of the legislature or the adoption of the proposed constitutional amendment, there is no basis in the law for holding that the revenues from motor-vehicle registration fees, operators' license fees, and the motor-vehicle fuel taxes are trust funds or that the moneys appropriated from the general fund of the state treasury under sec. 20.49, Stats., to the state highway commission creates a trust fund for exclusive highway use.

The plaintiffs' demurrer to the defendants' answer reaches back so that the sufficiency of the substance of the complaint can be determined. *Stephens v. Wheeler,* 193 Wis. 164, 171, 213 N. W. 464, and cases cited; *Banschbach v. Meuer,* 237 Wis. 454, 297 N. W. 402. The complaint fails to state a cause of action. The court below properly overruled the plaintiffs' demurrer to the answer.

In view of the conclusion reached, we do not deem it necessary to discuss or decide whether the plaintiffs, as taxpayers in a taxpayers' action, have any standing to sue for the relief sought.

*By the Court.*—Order affirmed.