STATE MEDICAL SOCIETY OF WISCONSIN, Respondent, v.
ASSOCIATED HOSPITAL SERVICE, INC., Appellant.

*March 30—April 28, 1964.*

484

486

For the appellant there were briefs by *Foley, Capwell, Foley & Kolbe* of Racine, and oral argument by *Rex Capwell.*

For the respondent there was a brief by *Roberts, Boardman, Suhr & Curry,* attorneys, and *Walter M. Bjork* and *Thomas G. Ragatz* of counsel, all of Madison, and oral argument by *Walter M. Bjork.*

GORDON, J.   The trial court interpreted this contract dispute in favor of the State Medical Society. The appellant, Blue Cross, disagrees with that interpretation and also urges that it is entitled to recover either on the theory of novation or under an approach of *quantum meruit.* We find nothing in the record to suggest that there has been a novation. A novation contemplates a substitution of a new contract for a previous one, and this is simply not consistent with the facts of the instant case. *Spycher v. Werner* (1889), 74 Wis. 456, 458, 43 N. W. 161.

There is no basis for an allowance in favor of Blue Cross on the grounds of *quantum meruit.* It is undeniably true that continued services were rendered by Blue Cross, but these are services which were required under the contract. They were neither extra services nor were they services which were beyond the contract of the parties. In our opinion, the right of Blue Cross to be reimbursed for its activities under the contract depends solely on the construction to be given to the contract. Accordingly, we now address ourselves to what we regard as the crucial question of the case, namely, the proper interpretation of the parties' agreement.

The controversy arises because of the fact that payments by customers, due on the 10th day of the month, were delayed. The presence of this problem did not come as a surprise to either party. It was a circumstance with which both parties were undoubtedly familiar. Indeed, there was never any question but that after the terminal dates Blue Cross

would continue to perform the administrative duties which were necessitated by the late payments.

The contract itself is a comprehensive one reflecting care in its preparation and execution. Although the "termination provisions" are set forth in detail in section IV, the parties did not expressly cover the late-pay problem in their formal agreement. Accordingly, there is an interpretation problem as to what was meant by that portion of section III which provides for reimbursable expenses:

"Blue Shield shall pay to Blue Cross, as reimbursement for its expenses hereunder:
"a. $.2119 per month for each Blue Shield contract in effect and serviced hereunder."

The position of Blue Cross is that it was obliged to continue various services as to those accounts upon which there had been late payment, and each of such accounts remained "in effect." The State Medical Society, on the other hand, contends that the delayed services rendered by Blue Cross were already compensated under the terms of the formal agreement.

A reading of section III and its specific requirement of reimbursement to Blue Cross for each "contract in effect and serviced hereunder" does not furnish an unequivocal answer to the issue in dispute—even though these are the words which must ultimately be interpreted. There is applicable thereto the following statement of Judge LEARNED HAND in *Helvering v. Gregory* (2d Cir. 1934), 69 Fed. (2d) 809, 810:

". . . the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create."

Considering the agreement as a whole, as well as the interpretation placed upon the agreement by the parties them-

selves, we are persuaded that the trial court correctly interpreted the agreement. We consider that the contract obligated Blue Cross to continue to service those accounts wherein late payment occurred without additional compensation. If Blue Cross had contemplated that it was to be paid for services rendered to insured persons who were late in their payments, such entitlement to compensation is not adequately recited in the basic contract.

A further consideration which supports the foregoing conclusion is what the trial court referred to as "the interpretation placed on the reimbursement provisions by the parties themselves." On three different occasions, a responsible officer of Blue Cross set forth in writings, which were received in evidence, statements which constituted recognition that Blue Cross would make charges "on the basis of the month in which the group was billed and payment due." These letters strongly suggest that reimbursement was not to be made on the basis of the month in which actual payment was received by Blue Cross.

The defendant takes the position that the aforesaid statements were not properly admissible since they constituted offers of compromise and settlement. This court subscribes to the proposition that proposed settlements and offers of compromise are to be encouraged and that it would contravene desirable public policy to permit such salutary proposals to be utilized in a hostile manner at trial. See *Connor v. Michigan Wisconsin Pipe Line Co.* (1962), 15 Wis. (2d) 614, 113 N. W. (2d) 121.

As noted in the *Connor Case,* at page 622, the rule excluding from evidence offers of compromise does not apply to " 'admissions of independent facts occurring during negotiations.' " See McCormick, Evidence (hornbook series), p. 540, sec. 251. In our opinion, the record in the instant case supports the view that the communications in question

were written at a period when the controversy arose and not when the parties were attempting to settle it. In other words, they were not offers of compromise but, on the other hand, were admissions made against interest.

It may often be difficult to determine whether a given statement is made as part of the negotiations in which the controversy is recognized or is made as part of an offer of compromise. We believe that each case will have to stand on its own facts and that in the instant case the trial judge properly overruled the objection to the admissibility of the defendant's admissions. However, under different circumstances, if a trial court is persuaded that a declaration by a disputant has been made for the purpose of attempting to resolve or compromise a dispute, we would encourage the trial court's sustaining of an objection to its admissibility.

The trial court denied interest to the plaintiff, explaining that this was "because of certain equitable considerations." If this were a matter in equity, there might be merit to this view on the part of the trial court. As Francis Bacon once explained, "Chancery was designed to mitigate the rigors of law by the conscience of a good man." However, we regard the instant dispute as a contractual disagreement. It is in law and not in equity. Interest is required as a matter of right. In *Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 334, 237 N. W. 277, this court said that interest is a "part of his compensatory damages, measured according to a rule of law which courts are bound to apply. It is not in the nature of a penalty which it is discretionary with a jury or judge to impose or to disregard." The plaintiff acquiesced in the delay but demanded interest on September 1, 1958, and it was entitled to such interest.

On this appeal, the respondent has moved that an order entered by the trial court enlarging the time for settling the bill of exceptions be reversed. The time for settling the bill

of exceptions pursuant to sec. 270.47, Stats., had passed when appellant's counsel brought an order to show cause for an extension of the time for settling the bill of exceptions. The trial court found that there was excusable neglect on the part of the appellant and exercised its discretion to extend the time to settle the bill of exceptions pursuant to sec. 269.45. We conclude that there was no abuse of discretion in this regard by the trial court in light of the case of *Hernke v. Northern Ins. Co.* (1963), 19 Wis. (2d) 189, 194, 120 N. W. (2d) 123.

*By the Court.*—Judgment modified to award interest to respondent from September 1, 1958, on the sum recovered under the respondent's first cause of action and, as so modified, affirmed.