SIVA TRUCK LEASING, INC., Plaintiff-Appellant,

v.

KURMAN DISTRIBUTORS, DIVISION OF S. ABRAHAM & SONS, INC., Defendant-Respondent,†

CALUMET DISTRIBUTING, INC., d/b/a D. Kurman Company, and Richard K. Sattler, Defendants.

Court of Appeals

*No. 91-0599. Submitted on briefs October 1, 1991.—Decided December 3, 1991.*

(Also reported in 479 N.W.2d 542.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Hodan & Doster, S.C.* by *Theodore J. Hodan,* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Atinsky, Kahn, Sicula & Teper* by *William S. Mautner,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Siva Truck Leasing, Inc., (Siva) and Kurman Distributors, Division of S. Abraham and Sons, Inc. (Abraham) disagree as to whether certain conduct of Abraham constitutes a violation of ch. 406, Stats., uniform commercial code—bulk transfers[1] and whether certain statements made by Siva create a novation and/or estop Siva from prosecuting its claim. Siva appeals from an order of the trial court granting summary judgment in favor of Abraham, denying summary judgment for Siva, and dismissing Siva's amended complaint against Abraham. We reverse, and remand to the trial court with directions to enter summary judgment in favor of Siva, based on the violation of the uniform commercial code—bulk transfers, only after a trial on the issues of novation and estoppel and in the event that the trial court finds that there was no novation and that estoppel does not apply.

## *Facts*

On March 11, 1988, Calumet Distributing, Inc., d/b/a D. Kurman Company (Calumet) leased two Ford trucks from Siva for a term of forty-eight months. The lease had a termination clause which established lessee liability in the amount of approximately $9,000 for each truck if the lease was terminated early.

At some point in time, Abraham and Calumet began negotiating an asset purchase transaction.[2] The assets of Calumet consisted largely of tobacco products, candy,

---

[1]Chapter 406, Stats., is known and may be cited as the uniform commercial code—bulk transfers. Section 406.101, Stats.

[2]The parties do not dispute that this transaction constituted a "bulk transfer" as defined in sec. 406.102, Stats.

and other food items for resale. In July 1989, an attorney for Calumet contacted Robert J. Dierksmeier (Dierksmeier), Siva's general manager. The attorney made no specific reference to Abraham, but merely asked what Siva's procedures would be if Calumet were sold. Dierksmeier orally indicated specific information that Siva would require and also faxed an "assignment and assumption form" to the attorney. This form was never returned to Siva.

Pursuant to sec. 406.104(1)(a) and (2), Stats., Calumet prepared and provided to Abraham a required "list of creditors." This list did not include Siva. Abraham gave notice to those creditors on the list, in compliance with sec. 406.105, Stats. However, on September 11, 1989, Calumet's attorney faxed a letter to Abraham's attorney which identified Siva as one of eight lessors and reported the positions of these lessors as to assignment of their leases.[3] The "closing" of the bulk transfer was September 18, 1989, seven days after the date of the fax transmission.

Siva did not receive the September payment on the lease of the two trucks. Consequently, in late September or the early part of October, Dierksmeier telephoned "accounts payable" at D. Kurman Company (Calumet); eventually Roland Fields, representing Abraham, responded to this contact. Following conversation[4]

---

[3]Siva's status was reported as "[t]entative oral consent given (pending Dunn & Bradstreet check), no credit application required."

[4]The parties differ as to the interpretation and legal effect of a series of conversations between Fields and Dierksmeier. The apparent date upon which "agreement" was reached was November 2, 1989. We note that this was not the date of their first conversation, which reportedly occurred in "late September, early October." Siva characterizes the alleged agreement as an attempt

between Fields and Dierksmeier, Abraham continued to use Siva's trucks and made monthly payments to Siva in the amount specified by the lease agreement between Calumet and Siva. The trucks were returned to Siva in January 1990.

On March 20, 1990, Siva brought an action against Abraham alleging a violation of the uniform commercial code—bulk transfers. On June 21, 1990, the trial court issued a scheduling order limiting amendments to pleadings to dates "on or before" July 21, 1990. On October 8, 1990, Abraham filed a motion for summary judgment dismissing Siva's complaint. On October 9, 1990, Siva filed an amended complaint, adding an additional cause of action: that as a condition of the asset sale and purchase, Abraham and Calumet had agreed that Abraham would assume the lease of the Siva trucks. On October 17, 1990, Abraham filed its answer to Siva's amended complaint. On October 18, 1990, Siva filed a motion for summary judgment against Abraham. A hearing on both summary judgment motions was held on October 29, 1990. The trial court rendered summary judgment for Abraham and against Siva, and dismissed Siva's complaint. At this time, the trial court requested Abraham to draft a written order pursuant to the oral judgment.

On October 30, 1990, Abraham submitted to the trial court the requested draft for a proposed order relative to the summary judgments motions; a copy of this proposed order was also served upon Siva. On November 2, 1990, by letter to the trial court, Siva objected to the draft of the proposed order, providing an alternative draft order restricting dismissal to the original cause of action and clearly preserving the additional claim found in the amended complaint. Additional letters arguing the

to mitigate damages, while Abraham characterizes it as a novation.

63

positions of each party were sent to the trial court. On December 13, 1990, the trial court signed an order identical to the proposed order prepared by Abraham, dismissing Siva's action against Abraham.

*Siva's Summary Judgment Motion*

When reviewing a grant of summary judgment, we apply the standards of sec. 802.08(2), Stats., using the same methodology as the trial court.[5] A trial court's decision on summary judgment is reversed if the trial court incorrectly decided a legal issue or if material facts were in dispute.[6] Because the opposing parties' motions for summary judgment rest upon the same transactional facts and provisions of law, we consider them together in the following discussion.

The trial court's decision states that it was uncontested that the creditor list provided to Abraham by Calumet failed to include Siva; that Abraham knew of the lease agreement seven days before the closing date; and that Abraham never gave notice to Siva before taking possession of Calumet's assets, which included the leased trucks. Thus, the question presented on the denial of Siva's motion for summary judgment is the application of statutes to a set of uncontested facts, a question of law which we review without deference to the trial

---

[5]*Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987); *Leverence v. United States Fidelity & Guar.,* 158 Wis. 2d 64, 73, 462 N.W.2d 218, 222 (Ct. App. 1990), *review denied,* 464 N.W.2d 423 (1990).

[6]*Hammer v. Hammer,* 142 Wis. 2d 257, 263, 418 N.W.2d 23, 25 (Ct. App. 1987), *review denied,* 144 Wis. 2d 953, 428 N.W.2d 552 (1988).

court's decision.[7]

We hold that Abraham has violated a duty to Siva imposed by the provisions of the uniform commercial code—bulk transfers, specifically secs. 406.104(1), (3), 406.105 and 406.107(3), Stats. Abraham had a duty to Siva to cause Calumet to include Siva in the list of existing creditors because Abraham had notice of the Siva's claim, the lease for two trucks. Thus, Siva was entitled to sue on its lease contract or levy against the assets of Calumet in the possession of Abraham after the September 18, 1989 bulk sale.[8]

The plain language of sec. 406.104(3), Stats., states unambiguously that when the list of creditors is incomplete but a buyer has knowledge of a creditor, the transfer is ineffective with respect to that creditor.[9] The plain language of sec. 406.107(3), Stats., states unambiguously that the notice to creditors "shall be delivered . . . to all

---

[7]*Radlein v. Industrial Fire & Casualty Ins. Co.*, 117 Wis. 2d 605, 613, 345 N.W.2d 874, 878-79 (1984); *Sutton v. Kaarakka*, 159 Wis. 2d 83, 86, 464 N.W.2d 29, 31 (Ct. App. 1990).

[8]*See* Uniform Commercial Code § 6-104 cmt. 2 (1962) *reprinted in* Wis. Stat. Ann. sec. 406.104, at 553 (West 1964) (when transfer is "ineffective," creditor may disregard the transfer and levy on the goods as still belonging to the transferor). There is no indication in the record that Siva ever levied against the transferred goods; however, Siva is entitled to pursue its contractual remedies against Abraham, pursuant to sec. 406.111, Stats.

[9]"[T]he transfer is not rendered ineffective by errors or omissions [in the list of creditors] unless the transferee is shown to have had knowledge." Section 406.104(3), Stats. *See also* sec. 406.104(1). The statement in subsection (1) that under certain conditions, "a bulk transfer subject to [ch. 406] is ineffective *against any creditor*" implies a similar reading of subsection (3). (Emphasis added.)

the persons shown on the list of creditors furnished by the transferor (s. 406.104) and *to all other persons who are known to the transferee* to hold or assert claims against the transferor."[10] With regard to these statutes, we note the following. First, neither party disputes that at the time of transfer, Abraham had knowledge of the lease. Second, Siva is a protected creditor, as that term is defined in sec. 406.109, Stats.: the creditors protected by chapter 406 are those "holding claims based on transactions or events occurring before the bulk transfer."[11] The 1988 lease is unquestionably a transaction occurring before the September 1989 transfer; Siva's claim is based upon this transaction. Third, that this right entitles Siva to the full amount due under the lease, including termination charges, is clear from the general provisions of the uniform commercial code[12] which direct liberal administration of chs. 401 to 409 in order that "the aggrieved party may be put in as good a position as if the other party had fully performed."[13] Fourth, we read the language of sec. 401.106(1), Stats., as permitting Siva to enforce this right against Abraham as if Calumet had timely performed its duty to "furnish a list of [its] existing creditors"[14] which would have included Siva as lessor. Finally, "[a]ny right or obligation declared by chs. 401 to 409 is enforceable by action unless the provision declaring it specifies a different and limited effect."[15]

Had Siva received the notice required by ch. 406, Stats., ten days before Abraham either took possession

---

[10] Section 406.107(3), Stats. (emphasis added).
[11] Section 406.109, Stats.
[12] Chapter 401, Stats.
[13] Section 401.106(1), Stats.
[14] Section 406.104(1)(a), Stats.
[15] Section 401.106(2), Stats.

of Calumet's goods or paid the major part of the purchase price, Siva would have been able to take appropriate legal action to preserve either the cash or tangible goods to ensure payment of the early termination fees. Unless there was a novation or Siva is estopped from pursuing the remedy, Siva is entitled to summary judgment under its contract to recover the termination charges from Abraham, pursuant to secs. 406.105 and 406.111, Stats.

*Abraham's Summary Judgment Motion*

However, Abraham argues that a series of conversations between Abraham and Siva, beginning in "late September [or the] first part of October" and ending on November 2, 1989, constitutes a novation of the lease agreement, relying upon *Navine v. Peltier*[16] and *State Medical Society of Wisconsin v. Associated Hospital Service, Inc.*[17]

Our supreme court has defined a novation as "an agreement between the obligor [here, Calumet], obligee [here, Siva] and a third party [here, Abraham] by which the third party agrees to be substituted for the obligor and the obligee assents thereto, the obligor is released from liability and the third person takes the place of the obligor."[18] Wisconsin recognizes novation by either substitution of obligations between the same parties or by substitution of parties.[19] In the case at bar, Abraham seeks to substitute both the parties and the obligation, i.e., to substitute a month-to-month lease for a forty-

[16] 48 Wis. 2d 588, 180 N.W.2d 613 (1970).

[17] 23 Wis. 2d 482, 128 N.W.2d 43 (1964).

[18] *Brooks v. Hayes,* 133 Wis. 2d 228, 244–45, 395 N.W.2d 167, 174 (1986).

[19] *Navine,* 48 Wis. 2d at 594, 180 N.W.2d at 616.

eight-month lease with an early termination penalty. In its analysis of a novation substituting both parties and obligations, a court must consider two questions: (1) did the evidence clearly show consent by all the parties,[20] and (2) was there sufficient consideration to support a new obligation?[21] With regard to Siva's alleged consent to a substitution of obligations, an express agreement is no longer necessary in Wisconsin.[22] Acceptance of the terms of novation may be implied from the facts and conduct of the parties in relation thereto.[23]

The alleged existence of a novation presents a legal conclusion, a mixed question of fact and law for the court.[24] The court must make determinations of legal "consent" by the parties and "sufficient" consideration. We give weight to the trial court's decision, although it is not controlling.[25] The reviewing court will uphold the factual determinations underlying legal conclusions, but determine whether the facts fulfill a legal standard as matter of law.[26] As we noted earlier, in consideration of summary judgment, the facts available to the trial court must be viewed in the light most favorable to the non-

[20]*Brooks*, 133 Wis. 2d at 244–45, 395 N.W.2d at 174; *Navine*, 48 Wis. 2d at 594, 180 N.W.2d at 616.

[21]*Navine*, 48 Wis. 2d at 597, 180 N.W.2d at 617.

[22]*Navine*, 48 Wis. 2d at 595, 180 N.W.2d at 616, *overruling In re Beaver Drainage District*, 244 Wis. 603, 614, 13 N.W.2d 76, 81 (1944), *reh'g denied*, 244 Wis. 614a, 14 N.W.2d 181 (1944).

[23]*Navine*, 48 Wis. 2d at 594–95, 180 N.W.2d at 616 (citing *Bishop-Babcock-Becker Co. v. Keely*, 160 Wis. 546, 548, 152 N.W. 189, 189 (1915)).

[24]*See Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

[25]*Id.*

[26]*Id.*

movant.[27] Examination of the trial court's decision provides only an abbreviated discussion of the claimed novation.[28] Thus, we examine the record independently.

The record contains the affidavit[29] and excerpts of deposition testimony[30] of Siva's general manager, Robert J. Dierksmeier. Dierksmeier stated in deposition that (1) any agreement to a month-to-month rental was an effort to minimize losses, based upon advice of counsel; (2) the agreement was made because Siva had "no other use for those two vehicles at that time"; (3) "this particular agreement over the telephone was made . . . on November 2d" (clearly implying that the first September/October telephone conversation is not dispositive); and (4) that, prior to the return of the trucks, Dierksmeier told Fields that Siva would seek the termination charge. Dierksmeier's affidavit states that "at no time did [Dierksmeier] ever agree or intend, by attempting to mitigate Siva's damages by helping Abraham out in allowing it to use the vehicles on a month to month basis, an

---

[27]*Grams v. Boss,* 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980); *Kreinz v. NDII Securities Corp.,* 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987).

[28]The trial court's discussion of its findings with regard to the novation consist of a single paragraph:

> Abraham contends that a novation occurred when it refused to assume the [Calumet] lease with Siva and the Siva representative agreed to a month-to-month lease with Abraham on the trucks. It is undisputed that Abraham would not assume the lease. And this supports Abraham's position that it would not be responsible for the lease agreement between [Calumet] and Siva.

In the trial court's comments we find no statement of facts or discussion relevant to "expression of consent" by the obligee [Siva] or the obligor [Calumet]; furthermore, we find nothing pertinent to "consideration in support of the new agreement."

[29]Supplied by Siva.

[30]Supplied by Abraham.

amendment or 'novation' of its original written lease contract."

Because Abraham bases its motion for summary judgment, in part, upon the alleged novation, Abraham bears the burden of proof as to its existence and we must examine the facts presented at the summary judgment hearing in the light most favorable to Siva.[31] Dierksmeier's statements in the record, even when viewed in the light *least* favorable to Siva, are merely inconsistent on the issue of Siva's alleged consent to a novation. More importantly, Abraham's presentation is devoid of any expression of consent to, or even knowledge about, the novation on the part of Calumet. There is also no mention of any consideration for the novation. Thus, Abraham has failed to prove essential material facts required by *Navine* and *Brooks*. The record shows that these facts are in dispute; therefore, summary judgment cannot apply.

On appeal, Abraham presents a third argument, that the alleged novation estops Siva from seeking a termination charge after Dierksmeier allegedly induced reliance on the part of Abraham by agreeing to a month-to-month lease. However, Abraham makes no citation to the record to provide a factual basis for the assertion that reliance was induced.[32] In addition, as noted above, Dierksmeier's affidavit states that Dierksmeier told Fields that he "expected payment from either [Calumet] or Abraham pursuant to the lease."

[31]*See Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477; *Kreinz,* 138 Wis. 2d at 209, 406 N.W.2d at 166.

[32]The reviewing court need not sift the record for facts which support counsel's contention. *Keplin v. Hardware Mut. Casualty Co.,* 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964), *reh'g denied,* 24 Wis. 2d 319, 130 N.W.2d 3 (1964).

██

Thus, viewed most favorably to Siva, the record shows disputed issues of material fact and makes a grant of summary judgment for Abraham inappropriate. Abraham fails to carry its burdens of proof as to the existence of the novation or estoppel. On remand, there must be a trial of the novation issue and if there is found to be no novation, then the trial court must grant summary judgment to Siva on its claim for termination charges.

### Dismissal of Siva's Amended Complaint

Section 802.09(1), Stats., permits a party to amend its pleadings "once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10." Section 802.10(3)(a), Stats., directs the trial court to set, after consultation with the parties, "[t]he time, prior to the pretrial conference, within which . . . pleadings may be amended."

Siva's amended complaint was filed on October 18, 1990, approximately seven months after the original complaint was filed on March 20, 1990. The filing of the amended complaint was also well after the last date for amendment provided by the trial court's scheduling order, July 21, 1990.

Once beyond the time in which the parties may amend their pleadings as a matter of right, such amendments may be made only "by leave of court or by written consent of the adverse party."[33] There is no record evidence to indicate that the court granted leave to amend the pleadings on October 18, or that Abraham consented to such an amendment.

---

[33]Section 802.09(1), Stats.

We note, however, that the trial court also failed to set forth the reasoning underlying its decision not to consider the amended complaint. This constitutes an abuse of discretion and requires that we remand for reconsideration.[34]

On remand, the trial court is to first determine the novation issue. If that determination is adverse to Abraham, then, as stated above, Siva is entitled to summary judgment. On the other hand, if the novation issue is determined favorably to Abraham, then the trial court is to consider the issue of the amended complaint, in the light of the dates and statutes set forth above, exercising its discretion to comport with the interpretations set forth by the decisions of the Wisconsin courts.[35]

---

[34]*See United States Fire Ins. Co. v. E.D. Wesley Co.,* 100 Wis. 2d 59, 63, 301 N.W.2d 271, 273 (Ct. App. 1980), *aff'd in part, rev'd in part on other grounds,* 105 Wis. 2d 305, 313 N.W.2d 833 (1982).

[35]*See Korkow v. General Casualty Co. of Wisconsin,* 117 Wis. 2d 187, 192–93, 344 N.W.2d 108, 111–12 (1984) (trial court has discretion to grant leave to amend at any stage of an action when justice so requires); *Wussow v. Commercial Mechanisms, Inc.,* 97 Wis. 2d 136, 148, 293 N.W.2d 897, 904 (1980) (pleading may be amended at any time it satisfies sec. 802.09(1), Stats., and if, in discretion of trial court, amendment does not come at time when it is likely to cause unfairness, prejudice, or injustice); *John v. John,* 153 Wis. 2d 343, 365, 450 N.W.2d 795, 804 (Ct. App. 1989), *review denied,* 454 N.W.2d 805, *cert. denied,* 111 S. Ct. 53 (1990) (trial court may not permit amendment to unfairly deprive adverse party of opportunity to contest issues raised by amendment).

## Summary

We reverse the order of the trial court denying Siva's summary judgment motion and remand for entry of judgment for Siva on the issue of the occurrence of a violation of the uniform commercial code—bulk transfers. We noted above that summary judgment can only be applied after consideration of the novation and estoppel questions. We reverse the order of the trial court granting summary judgment for Abraham and remand for trial consonant with this opinion on the issues of novation and estoppel. As to dismissal of Siva's entire, i.e., amended complaint, we reverse and remand with directions to the trial court to set forth the reasoning underlying its decision should it be necessary to decide the efficacy of the amended complaint.

*By the Court.*—Order reversed and cause remanded with directions.