COURT OF APPEALS
DECISION
DATED AND FILED

July 25, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP64**

Cir. Ct. No. **2019CV2437**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

FRANK LISKA AND ROSE LISKA,

PLAINTIFFS-RESPONDENTS,

V.

PAMELA BUBLITZ,

DEFENDANT-APPELLANT.

---

APPEAL from orders of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed in part, reversed in part, and remanded with directions.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Pamela Bublitz (Bublitz) appeals orders of the circuit court granting partial summary judgment against her in favor of Karen Shoman, Special Administrator for the Estate of Frank Liska (Special Administrator)[1] and Rose Liska (Rose), and granting sanctions against Bublitz for discovery violations.[2] Upon review, we affirm the circuit court's orders granting partial summary judgment and imposing sanctions of default judgment in favor of the Liskas and dismissing Bublitz's counterclaims. However, we reverse the circuit court's order granting the specific dollar amount ordered as part of the sanction and remand with directions to explain how the court determined the specific amounts awarded as part of the sanction.

## BACKGROUND

¶2 On February 21, 2018, Frank and Rose named Bublitz to serve as their Financial Power of Attorney (POA). At the time of Bublitz's appointment as POA, Frank and Rose were 93 and 89 years old, respectively.

¶3 Frank and Rose revoked Bublitz's POA later that year on August 21 and 22, 2018, and on October 3, 2018, counsel for the Liskas demanded that Bublitz "turn over all records of [Frank] that you have, and account for all disbursements or expenses made from his assets by you." Bublitz had also been using Frank's car, and counsel demanded that Bublitz return the car by October 10, 2018. Bublitz requested additional time to comply; however, after

---

[1] Frank Liska passed away since the filing of the summons and complaint in this case, and pursuant to a motion for substitution, Frank's estate has been substituted as the plaintiff.

[2] For ease of reading, we refer to Frank, his estate, and Rose collectively as the Liskas when appropriate.

Bublitz still failed to comply after being given additional time, counsel sent another letter dated November 21, 2018, again demanding an accounting and the return of Frank's personal property. At this time, counsel also sent a similar letter on Rose's behalf.

¶4    When Bublitz again failed to comply, the Liskas filed a complaint on March 26, 2019, alleging eight causes of action: breach of duty of accounting, breach of fiduciary duty, replevin, conversion, civil theft, fraud, undue influence, and fraudulent misrepresentation. Bublitz filed an answer and counterclaims on June 10, 2019.

¶5    On April 28, 2020, the Liskas filed a motion for partial summary judgment that Bublitz "breached her fiduciary duty by failing to provide an accounting" and is "liable … for conversion." The Liskas asserted that during the six months that Bublitz acted as Frank's POA, she withdrew over $71,440 from his BMO Harris checking account and cashed out $122,310.75 worth of BMO Harris Certificates of Deposits prior to their maturity dates. They further asserted that, of that $193,750.75, Bublitz did not account for $159,092.75 in disbursements from Frank's accounts. They also asserted that during the six months that Bublitz acted as Rose's POA, she cashed out Rose's Chase Bank Certificate of Deposit for $11,161 with a check payable to Bublitz, withdrew $4,334.60 from Rose's BMO Harris savings account and closed the account, and withdrew $5,634.35 from Rose's Chase Bank account for a total of $21,129.95, and asserted that Bublitz did not account for those sums.[3]

---

[3] We note that the Liskas asserted that Bublitz had withdrawn a larger sum from Rose's accounts, but as of the hearing on the motion for summary judgment, she had not accounted for the $21,129.95.

¶6    The circuit court held a hearing on the motion for summary judgment on June 12, 2020.[4]  The court began by addressing several documents Bublitz filed at 4 a.m. that morning and found that Bublitz had not filed anything in response to the Liskas' motion for summary judgment.  Therefore, the court stated, "There's been no response, and the [c]ourt will find that there is no material issue of fact here and the [c]ourt will grant summary judgment to the plaintiff Rose in the amount of $21,129.95 and to the estate of Frank Liska in the amount of $159,092.75."  The court entered a written order on July 17, 2020, to the same effect.[5]

¶7    The case proceeded with the plaintiff's remaining claims and Bublitz's counterclaims, and on January 13, 2021, Judge Grady held a hearing to address outstanding motions, including three motions to dismiss Bublitz's counterclaims and a motion for injunctive relief related to Bublitz's use of Frank's car, which were all filed by the Liskas.  At that hearing, Judge Grady granted the Liskas' motions to dismiss Bublitz's counterclaims, with the exception of her breach of contract and replevin claims, and the Liskas' motion for injunctive relief, which limited Bublitz's use of Frank's car.  The court also addressed "things trickling in" past the original deadline of September 30, 2020, for close of discovery and filing motions, noted that the failure to abide by the deadlines in the scheduling order was causing delay in resolving the case, and indicated that the

---

[4] The Honorable Jeffrey A. Conen presided over the hearing for the motion for summary judgment and entered the corresponding order.  However, three additional judges—the Honorable Lindsey Canonie Grady, the Honorable William S. Pocan, and the Honorable William Sosnay—presided over this case during the three years it was pending in the circuit court.

[5] The order was originally entered in violation of the five-day rule, but the matter was resolved.

court would not entertain anything more past the extended deadline of December 28, 2020. The court further put Bublitz "on notice" that the court would set a scheduling order at the next hearing with "firm" dates because "[t]his case has gone on two years, so the [c]ourt would not allow for a delay or an adjournment by anyone."

¶8 However, at a scheduling conference on February 1, 2021, Judge Grady again addressed ongoing discovery issues, restated that discovery was cut off as of December, and yet Bublitz requested additional time for discovery because she still needed more time to compile records for the accounting. In so doing, for the first time since the Liskas' original demand for an accounting in October 2018, Bublitz told the court that all of the "records and receipts, statements" needed to comply with the accounting and the discovery demands were in a five-gallon Rubbermaid tote. Judge Grady responded, "My only confusion is that—So these receipts have been in your possession the entire time in a [Rubbermaid] tote—is that correct?" Bublitz said, "Yes." Judge Grady then gave her until March 1st to electronically turn over those items.

¶9 On July 12, 2021, after Bublitz failed to turn over the documents by March 1st, the Liskas filed a motion to compel discovery and a motion for sanctions. Judge Pocan heard the motion on July 26, 2021, and he granted Bublitz an additional thirty days to respond to the Liskas' discovery and to provide a list of witnesses and an itemized statement of damages. In granting Bublitz an additional thirty days, he also warned her that complying was serious and warned Bublitz that "if you don't comply by that point, the [c]ourt is likely going to grant some or all of what [the Liskas' counsel] is seeking in part because we've given you this additional chance." Bublitz responded, "I understand, your honor. And thank you."

¶10    Nonetheless, on September 14, 2021, the Liskas filed a second motion for sanctions when Bublitz failed to comply with Judge Pocan's July 26, 2021 orders granting Bublitz another thirty days to respond to discovery and provide a list of witnesses and itemized statement of damages. Judge Sosnay heard the motion on September 29, 2021.

¶11    At the hearing, Bublitz indicated that she had been having personal health issues, her children were having health issues, and she was struggling with homelessness. She stated that "putting together an accounting was an extreme task" and that "the burden has fallen upon me under extreme circumstances of homelessness, lack of internet connectivity." Judge Sosnay recognized that this case was first filed in 2019, that there were previous motions to compel discovery, previous orders from the court for Bublitz to comply, and previous failures on Bublitz's part to provide the information she claimed to have. The court then acknowledged that Bublitz had been warned on several occasions in the past that non-compliance could result in sanctions. Judge Sosnay continued,

> The record is clear of a blatant disregard of her part to follow previous courts' orders and deadlines. The court has indicated, finds that she does so intentionally, and I do find that her conduct has been egregious. The court does not take that lightly. I've examined the record carefully[.]

Judge Sosnay then announced that he was "going to impose the sanction of dismissing [Bublitz's] counterclaims and entering a default judgment."

¶12    Judge Sosnay subsequently issued a written order on November 30, 2021, titled "Order on [Liskas'] Motion for Sanctions for [Bublitz's] Failure to Comply with the Court's July 26, 2021 Orders." The court made findings of facts and ordered a default judgment against Bublitz. Specifically, the court entered judgment in favor of the Special Administrator in the amount of $132,203.13 "for

damages due to the fraud committed by [Bublitz] while acting in a fiduciary capacity and WIS. STAT. § 895.446"; judgment in favor of Rose in the amount of $35,850 "for damages due to the fraud committed by [Bublitz] while acting in a fiduciary capacity and WIS. STAT. § 895.446"; judicial conveyance of Frank's car to the Special Administrator and an order for Bublitz to return Frank's car; costs of the action; and reasonable attorney fees. The court also denied Bublitz's remaining counterclaims and dismissed them with prejudice.

¶13 The Liskas' counsel subsequently filed an affidavit of costs and reasonable attorney's fees, which included costs totaling $70 and attorney fees in the amount of $12,690. The circuit court then issued a written "Order for Judgment" on January 5, 2022, which states that judgment may be entered against Bublitz in favor of the Estate of Frank Liska in the amount of $291,295.88[6] and judgment may be entered against Bublitz in favor of Rose in the amount of $56,979.95.[7] The order further provided that judgment may be entered against Bublitz in favor of Legal Action of Wisconsin, Inc. in the amount of $12,760 for costs and attorney's fees.

¶14 The circuit court denied Bublitz's attempts to "reopen" summary judgment and "set aside" the sanctions, and Bublitz filed a notice of appeal on January 13, 2022. Additional relevant facts will be set forth below as necessary.

---

[6] This appears to be the combined total of the $159,092.75 awarded by Judge Conen and the $132,203.13 awarded by Judge Sosnay to the Estate of Frank Liska.

[7] This appears to be the combined total of the $21,129.95 awarded by Judge Conen and the $35,850.00 awarded by Judge Sosnay to Rose Liska.

**DISCUSSION**

¶15    On appeal, Bublitz first argues that "it was improper for [Judge Conen] to enter a $181,000[8] partial summary judgment as a sanction because [Bublitz's] conduct was not egregious, and the harshness of this sanction was not merited."  Second, Bublitz argues that "it was improper for [Judge Sosnay] to enter an additional $168,053.13 judgment against Bublitz as a discovery sanction because neither was this conduct egregious, nor the harshness of this sanction merited."  We address each of Bublitz's arguments below.

### I.    The circuit court properly granted Liskas' motion for partial summary judgment

#### A.    Applicable Law

¶16    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2) (2021-22).[9]    Affidavits in support of and in opposition to a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence."  Sec. 802.08(3).  We review a grant of summary judgment using the same standards the circuit court applied in making its determination, and "accordingly, we benefit from, but need not give

---

[8] We note that the actual amount of the partial summary judgment ordered by the circuit court was $180,222.70.

[9] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

deference to, the analys[is] of the [circuit court]." *See State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶12, 275 Wis. 2d 35, 683 N.W.2d 75.

### B. The circuit court properly granted partial summary judgment—not as a sanction

¶17    As noted above, Bublitz argues that the circuit court erroneously granted partial summary judgment in favor of the Liskas as a sanction and that "[t]he court then summarily entered judgment against Bublitz in the amount of $181,000 without any finding her conduct was egregious, or that there was no clear and justifiable excuse for her putative noncompliance." She further argues that "[t]o enter a default judgment, the [circuit] court must determine that the noncomplying party's conduct is egregious or in bad faith and without a clear and justifiable excuse."

¶18    We disagree that any finding of egregious conduct or clear and justifiable excuse was necessary in this case. The circuit court granted summary judgment because there "was no genuine issue as to any material fact" and the Liskas were "entitled to a judgment as a matter of law," *see* WIS. STAT. § 802.08(2), and contrary to Bublitz's contention, the circuit court did not grant summary judgment as a sanction. The record plainly reflects that the Liskas filed a motion for partial summary judgment, Bublitz failed to file a response opposing summary judgment, and the circuit court consequently granted the Liskas' motion for partial summary judgment because there was no issue of material fact given that there was no response.

¶19    The Liskas filed a motion entitled, "Motion for Partial Summary Judgment" on April 28, 2020, and argued that Bublitz breached her fiduciary duty as POA by failing to provide an accounting and was, therefore, liable for

conversion. *See **Alexopoulos v. Dakouras***, 48 Wis. 2d 32, 40-42, 179 N.W.2d 836 (1970) (explaining that an agent has a fiduciary duty to keep accounts and render an accounting "when called upon"); *see also* WIS. STAT. § 244.14 (listing an agent's duties). The Liskas further summarized what they believed Bublitz failed to account for and attached to the supporting affidavit as exhibits were copies of BMO Harris Bank account statements for Frank and Rose, Elan credit card statements for Frank, and Chase Bank account statements for Rose related to the time period that Bublitz acted as POA for both Frank and Rose.

¶20 As related to Frank's funds, the Liskas maintained that Bublitz withdrew over $71,440 from Frank's BMO Harris checking account and cashed out his BMO Harris Certificates of Deposits worth $122,310.75 prior to their maturity dates, for a total of $193,750.75. The brief then itemized the disbursements that were still unaccounted for at the time of the motion for partial summary judgment from Frank's Elan credit card, his BMO Harris Certificates of Deposit, withdrawals from Frank's BMO Harris savings account, and his BMO Harris checking account. The Liskas then asserted that the records provided showed that Bublitz did not account for $159,092.75 in disbursements from Frank's funds.

¶21 As related to Rose's funds, the Liskas asserted that during the six months that Bublitz acted as Rose's POA, she cashed out Rose's Chase Bank Certificate of Deposit for $11,161 with a check payable to Bublitz, withdrew $4,334.60 from Rose's BMO Harris savings account and closed the account, and withdrew $5,634.35 from Rose's Chase Bank account for a total of $21,129.95 for which Bublitz did not account.

¶22 At the hearing addressing the motion for summary judgment, Judge Conen noted that Bublitz filed several documents at 4 a.m. that morning, but that he did not look at what Bublitz had filed because it was untimely. Bublitz orally asked for an extension of time to respond, and Judge Conen stated, "You've known that for the last year and a half that I've been dealing with you. I have given you all kinds of breaks across the board to allow you to get this done and all you have done is continued to delay, delay, delay, delay." Bublitz began to argue why it was so difficult to make the accounting, but Judge Conen responded that he was addressing "the issue of the fact that [Bublitz] failed to respond [to the summary judgment motion] timely." Bublitz admitted, "Okay. I failed to respond."[10] Consequently, at the end of the hearing, Judge Conen stated, "There's been no response, and the [c]ourt will find that there is no material issue of fact here and the [c]ourt will grant summary judgment to the plaintiff Rose in the amount of $21,129.95 and to the estate of Frank Liska in the amount of $159,092.75."

¶23 To create an issue of material fact precluding summary judgment, Bublitz was required to "set forth such evidentiary facts as would be admissible in evidence." *See* WIS. STAT. § 802.08(3). "The party opposing summary judgment 'may not rest upon the mere allegations or denials of the pleadings' but instead, through affidavits or otherwise, 'must set forth specific facts showing that there is

---

[10] Bublitz makes a tortured argument that because Judge Conen denied her oral request for an extension of time to respond to the motion for summary judgment on the day of the hearing that Judge Conen ordered judgment against Bublitz as a sanction. However, Bublitz admitted that she did not respond to the motion, and therefore, the record shows there were no material issues of fact. Bublitz cites no authority to support her argument that a court must find that the opposing party's "conduct was egregious or that there was no clear and justifiable excuse for her putative noncompliance." Because the arguments are undeveloped and lack any legal authority, we do not address them. *See* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

11

a genuine issue for trial.'" ***Racine Cnty. v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶26, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting WIS. STAT. § 802.08(3)). By admittedly failing to respond in any form, Bublitz failed to create any issue of material fact precluding summary judgment.[11]

¶24 In sum, we conclude that the record shows there is no material issue of fact that Bublitz failed to fulfill her fiduciary duties as Frank's and Rose's POA to keep and render accounts and, when called upon, to render an accounting. Thus, we conclude that the Liskas are entitled to partial summary judgment in the amounts granted by the circuit court. We further conclude that the record shows that the circuit court did not grant the partial summary judgment as a sanction against Bublitz for failing to comply with discovery or orders of the court, and we reject Bublitz's arguments to that effect.

## II. The Circuit Court reasonably exercised its discretion in determining that sanctions against Bublitz should be imposed

### A. Applicable law

¶25 We review the circuit court's grant of the Liskas' motions for sanctions and default judgment dismissing Bublitz's counterclaims for an

---

[11] We note that in her brief, Bublitz stated that "[t]he motion for partial summary judgment also gave short shrift to the eleven exhibits Bublitz had filed on January 6, 2020, with a detailed accounting of the expenses … and then the dozens of additional exhibits she had filed on March 10, 2020." However, Bublitz did not explain what those documents contained and more importantly how they related to the itemized statement of amounts withdrawn from Frank's and Rose's accounts. Moreover, there is nothing in the record that reflects that these documents were attached to any affidavit, and Bublitz does not assert what they were or explain why they were filed. It appears that Bublitz was just randomly filing these documents to show that she was complying with discovery demands. In fact, after Bublitz continued to file discovery documents with the court, Judge Grady warned Bublitz on February 1, 2021, in regards to turning over the documents in the tote that "you cannot, cannot electronically or otherwise file a massive amount of receipts with this court."

erroneous exercise of discretion. In reviewing a circuit court's exercise of discretion, this court's inquiry is not whether we would have done the same thing if we were sitting as a circuit court judge. *See Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶40, 299 Wis. 2d 81, 726 N.W.2d 898. Rather, we uphold the circuit court's decision "if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* "The decision to impose sanctions and the decision of which sanctions to impose, including dismissing an action with prejudice, are within a circuit court's discretion." *Id.*

¶26 "Although dismissing an action with prejudice is within a circuit court's discretion, it is a particularly harsh sanction. It is therefore appropriate only in limited circumstances." *Id.*, ¶42. The *Marquardt* court explained that "[s]pecifically, WIS. STAT. § 804.12(2)(a) and § 805.03 limit the sanctions that circuit courts may impose for failure to prosecute and for failure to comply with court orders to those that are 'just.'" *Id.*, ¶43. The court further stated that "Wisconsin courts have interpreted this limitation to mean that dismissal requires that the non-complying party has acted egregiously or in bad faith." *Id.* "Failure to comply with circuit court scheduling and discovery orders without clear and justifiable excuse is egregious conduct." *Id.* (citations omitted). The court also stated that "[w]here the circuit court finds that failures to respond to discovery and follow court orders are 'extreme, substantial, and persistent' it may dismiss the action with prejudice on the grounds that the conduct is egregious." *Id.* (citation omitted).

### B.      Analysis of the Circuit Court's Exercise of Discretion

¶27     Turning to this case, we conclude that the circuit court did not erroneously exercise its discretion when it imposed the sanctions of dismissing Bublitz's counterclaims and granting default judgment because it examined the relevant facts and applied the proper standard of law to reach the conclusion that Bublitz's conduct was "blatant, intentional, egregious, unfair, and costly to [the Liskas]."[12]  However, we further conclude that the record lacks an explanation of the dollar amounts the circuit court awarded as part of the sanction, and therefore, we remand with instructions to provide clarification regarding the dollar amounts in the circuit court's order.

*Sanctions of default judgment for the Liskas' claims*
*and dismissal of Bublitz's counterclaims*

¶28     We first address whether the circuit court reasonably exercised its discretion in granting default judgment on liability for the Liskas' claims as a sanction and dismissing Bublitz's counterclaims based on Bublitz's conduct in failing to comply with discovery demands and with court orders, and we conclude that the circuit court reasonably exercised its discretion in doing so.

¶29     Over a period of time spanning two and one half years, from March 29, 2019, when the complaint was filed, to September 29, 2021, when Judge Sosnay granted the Liskas' motion for sanctions, four judges—Judge Conen, Judge Grady, Judge Pocan, and Judge Sosnay—all presided over this case. Each of the judges had to deal with Bublitz's failure to comply with discovery

---

[12]  On appeal, Bublitz states that she is not appealing the dismissal of her counterclaims.

demands and court orders regarding discovery and Bublitz's repeated requests for extensions to produce the documentation for the accounting.

¶30     In reaching this conclusion, we note that the most compelling factor in deciding whether Bublitz acted egregiously or in bad faith is the fact that, from the inception of this case in 2019, Bublitz had all of the documents that were necessary to comply with the discovery demands and the courts' orders in a five-gallon Rubbermaid storage tote.  Yet, she did not share that fact with the Liskas or the court until years later during the scheduling conference before Judge Grady on February 1, 2021, and as of September 29, 2021, she had yet to produce the documents from this tote after making repeated requests for more time to do so.[13]

¶31     With that background as a starting point, we provide a more detailed account of Bublitz's conduct throughout the course of this case.  Here, we note that from the beginning in 2018, Bublitz failed to respond to demand letters from the Liskas' counsel, and the Liskas were forced to file a complaint on March 26, 2019.  At the first court appearance on November 4, 2019, the court ordered that Bublitz complete the accounting by December 16, 2019.  Yet, at the next status conference on January 9, 2020, Bublitz requested a sixty-day adjournment because she had more paperwork to produce to the Liskas—the court granted the request, and the matter was adjourned to March 10, 2020.  However, Bublitz did not appear on March 10, 2020, and the matter was set for a hearing on "summary judgment" for May 20, 2020.

---

[13] We recognize that Bublitz filed several documents with the court over the course of these proceedings seemingly in an attempt to comply with her responsibility to provide an accounting.  However, the documents provided over the course of the proceedings failed to satisfy Bublitz's responsibility to provide an accounting.

¶32   Then, at the hearing on the Liskas' motion for partial summary judgment, Bublitz asked for yet another extension to produce documentation. Judge Conen responded, "You've known that for the last year and a half that I've been dealing with you. I have given you … all kinds of breaks across the board to allow you to get this done and all you have done is continued to delay, delay, delay, delay." He further stated that "[t]his is not the first time. I have tried to get you to provide documentation over the last year and you've provided some and we just have not moved this matter along."

¶33   The parties next appeared on July 29, 2020, following which Judge Conen issued a scheduling order providing that "Discovery shall be completed by all parties no later than September 30, 2020."

¶34   The parties then appeared before Judge Grady on January 13, 2021, to resolve several outstanding motions, and the court addressed Bublitz's continuing failure to produce documentation. In so doing, it was at this hearing that Bublitz first alleged that she had all the relevant documents in a five-gallon Rubbermaid tote and that she would have FedEx scan the documents and provide them to the Liskas. Judge Grady stated:

> So my concern—and, Ms. Bublitz, this is the issue that I know Judge Conen at least dealt with to a certain extent in this court—which is every time there's a hearing, there is a new hesitation or a new request for time. So if you were aware that you were in possession of all of these documents —and you're aware because [the Liskas' counsel] has repeatedly asked for things to be turned over and for discovery to either stop or complete because there has to be an end[.]

Despite concern over the repeated requests for extensions, Judge Grady ultimately granted Bublitz yet another extension to March 1st.

¶35 The case was then reassigned to Judge Pocan and set for a status conference on June 23, 2021. However, Bublitz again failed to appear, and the case was set for a motion hearing and a status conference on July 26, 2021.

¶36 In the meantime, on July 12, 2021, the Liskas filed a motion to compel discovery and a motion for sanctions for Bublitz's failure to comply with the court's previous order. Thus, at the hearing on July 26, 2021, Judge Pocan asked Bublitz when she would be able to have full and complete responses to the Liskas' counsel. Bublitz stated that she wanted to have counsel in the matter. Judge Pocan responded that "[t]his [case] has been pending since March [2019] so over two years. So, when you indicate that you want a chance to obtain counsel, certainly obtain counsel. But that's not going to delay the discovery in this matter. Too much time has gone on." Nevertheless, Judge Pocan said that he would give Bublitz another thirty days to produce the documentation, although he also warned Bublitz that complying with the order was serious and "if you don't comply by that point, the [c]ourt is likely going to grant some or all of what [the Liskas' counsel] is seeking in part because we've given you this additional chance." Bublitz responded, "I understand, your honor. And thank you."

¶37 On September 14, 2021, the Liskas filed a motion for sanctions for Bublitz's failure to comply with Judge Pocan's July 26, 2021 orders. In the supporting affidavit, the Liskas' counsel stated that Bublitz failed to provide any response to the Liskas' April 2, 2021 discovery demand and failed to provide her witness list and damage itemization by August 25, 2021.

¶38 At the start of the hearing on September 29, 2021, addressing the Liskas' motion for sanctions, Judge Sosnay told Bublitz that "Judge Pocan previously ruled on this and set it over for a hearing on today's date for sanctions."

17

Liskas' counsel then summarized the history of the case regarding Bublitz's history of not producing the discovery and requesting extensions that were granted, and court orders that were not complied with. As to Judge Pocan's order on July 26, 2021, the court stated that August 26, 2021, came and went and Bublitz did not file any of the documents that Judge Pocan ordered her to file, nor did she produce a complete response to discovery requests.

¶39    Bublitz then told Judge Sosnay about her family health problems and her personal health issues. She stated that "putting together an accounting was an extreme task" and that "the burden has fallen upon me under extreme circumstances of homelessness, lack of internet connectivity." She also told the court that she was not being disobedient—that "the workload, while maintaining two children who reside separately from me, 40 miles from me and 40 miles apart from each other, it has been quite extreme."

¶40    Judge Sosnay then noted that the case was filed in 2019 and had been heard by Judges Conen, Grady, and Pocan. He stated that Judge Pocan addressed the status of the motion to compel which was initially brought up by Liskas' counsel in April 2021. He then stated Judge Pocan ordered that Bublitz "produce the discovery and the records on or before August [2021]. [Bublitz] was warned of her failure to do so. The court notes that she now is telling the court that she has serious health problems, and that's why she did not produce these records as ordered." The court stated:

> The court obviously takes into account and is not insensitive to someone being ill. However, I also have to look at the credibility of this and the extent to which it was a basis upon which she could not comply with the court order. I would note that, most importantly, that [Bublitz] appears to be intelligent, articulate. She obviously has filed things when necessary to set forth her position. Yet, since July 26th, [2021,] and certainly after August 25th, [2021,]

she never notified the court, asked for a remedy or relief, advised the court and counsel that she had additional health problems, and she never requested additional relief from the court. Nor did she ask for an adjournment.

On today's date the court received some filing from [Bublitz], which is not timely, it does not appear to be responsive, and the court notes that [Bublitz's] actions have been blatant, has delayed the proceedings, have been extremely unfair and costly, and they have been at times intentional, which is evidenced by the fact that she clearly did not file the information ordered by Judge Pocan after a period of time on August 25th. In other words, this was not something that she was told to do in a short period of time. She was given quite a bit of time over a very lengthy period.

Judge Sosnay then went on to say:

[Bublitz] is pro se and the court is sensitive to that and takes that into consideration. However, the court looks at her overall conduct and her actions in this case, and the court notes that despite being pro se, she is still obligated to follow court orders, particularly explicit ones and important ones that can result in severe consequences. I'm referring to Judge Pocan's July 26, 2021, order. She failed to comply with that.

The record is clear of a blatant disregard of her part to follow previous courts' orders and deadlines. The court has indicated, finds that she does so intentionally, and I do find that her conduct has been egregious. The court does not take that lightly. I've examined the record carefully, and any-body reviewing this record I believe would come to the same conclusion.

¶41 The circuit court then announced that it was "going to impose the sanctions of dismissing [Bublitz's] counterclaims and entering a default judgment." Judge Sosnay then issued a corresponding written order dated November 30, 2021, findings of fact, conclusions of law, and judgment.

¶42 As demonstrated by the foregoing, Bublitz engaged in a persistent pattern of avoidance, delay, and disregard of discovery orders. *See **Marquardt**,*

299 Wis. 2d 81, ¶43. Although Bublitz admitted that she had all the documents necessary to comply with the Liskas' demand for an accounting, discovery demands, and the courts' orders in her possession as of October 3, 2018, when Frank and Rose first made their demand for an accounting, as of the hearing before Judge Sosnay on September 29, 2021, she still had not complied with the courts' orders—a period of almost three years.

¶43 In further explaining his decision in response to a motion for reconsideration from Bublitz, Judge Sosnay considered Bublitz's persistent pattern of avoidance, delay, and disregard of the circuit court's discovery orders. He stated that "[t]here is a history of non-compliance here." He noted that "this is not a situation that has arisen recently or something that the court notes was done where things weren't followed just once." He also stated that "[t]his case began with Judge Conen. He made rulings on it after delays were made."

¶44 Judge Sosnay also pointed out that although Judge Grady had explicitly ordered Bublitz to produce the documents—that she apparently had all along—to the Liskas by March 1, 2021, Bublitz did not. He further noted that even then "Judge Pocan, the third judge, allowed [Bublitz], extensions certainly giving her the opportunity to comply with [Judge Grady's] order." Judge Sosnay found that "[t]here is a history of non-compliance here … the court found the conduct over the course of this case, including the more recent conduct since June of this year, to be egregious." He went on to say that "but if the court would not have done so [ordered the sanctions], it would have made these orders meaningless. It would have excused [Bublitz] for no really valid reason to bring about this delay." He further said that "[a]nd even as evidenced by her filing today, the defendant continues to pursue this course of conduct." He also stated that "[Bublitz] only wishes to file things at the last minute as a last ditch effort to

obviously take the position that she is complying." Further, he stated that "[Bublitz] obviously has filed things when necessary to set forth her position."

¶45 We agree with Judge Sosnay's conclusion that the record reflects that Bublitz's "actions have been blatant, [have] delayed the proceedings, have been extremely unfair and costly, and they have been at times intentional." We also agree with his conclusions that "[t]he record is clear of a blatant disregard on [Bublitz's] part to follow previous courts' orders and deadlines" and "that she does so intentionally." Therefore, we conclude that the circuit court reasonably exercised its discretion in this case when it entered default judgment on the Liskas' claims and dismissed Bublitz's counterclaims with prejudice as a sanction for Bublitz's persistent and pervasive failure to comply that has caused this case to languish for years in the circuit court.

*Monetary sanctions imposed*

¶46 Nevertheless, as previously noted, we also conclude that based on the record before us, we cannot determine how the circuit court determined the amount of damages it awarded, and we remand for clarification of the $132,203.13 and $35,850 that were awarded.

¶47 The circuit court's written order from November 30, 2021, states that the judgment is "due to the fraud committed by [Bublitz] while acting in a fiduciary capacity and WIS. STAT. § 895.446" for both the estate and Rose and then it provides a dollar amount for each. However, the Liskas' motion for sanctions does not include any specific dollar amounts. Rather, the motion requested that the court impose sanctions against Bublitz, including, but not limited to: (1) grant a default judgment against Bublitz; (2) limit or prohibit the witnesses, evidence and/or exhibits Bublitz can present at trial; (3) strike any of

Bublitz's pleadings or parts of pleadings, which she did not provide in response to the Liskas' April 20, 2021, interrogatories and requests for production of documents; (4) enter an order that the facts that involve matters subject to the discovery shall be taken to be established for the purposes of the action in accordance with the Liskas' claims; (5) an award of reasonable attorney fees for bringing [the] motion; and (6) any other relief the court deems necessary.

¶48    Moreover, during the hearing on the motion for sanctions on September 29, 2021, the Liskas' counsel did not argue for any dollar amount as damages for any of their claims if the court were to grant default judgment as a sanction. Furthermore, when rendering its oral ruling on the motion, the circuit court did not express any dollar amounts that it was awarding and how the amounts were to be determined. The court merely stated, "The court, accordingly, is going to impose the sanction of dismissing [Bublitz's] counterclaims and entering default judgment." It then directed counsel to "prepare an order consistent with that."

¶49    The Liskas' counsel submitted a proposed order on September 29, 2021, which was signed by the court on November 30, 2021. As noted above, on October 1, 2021, Bublitz filed a "notice of motion [and] motion to set aside sanctions dismissing [Bublitz] counterclaims [and] also, notice [and] motion to revise current scheduling order." On October 21, 2021, she also filed a "notice of motion and motion to reopen partial summary judgment, judgment for no accounting reimbursement, [the Liskas'] motion for discovery, [and] order for sanctions dismissing [Bublitz] counterclaims" and various letters to the court and documents. The court heard the motions on November 12, 2021, and orally

denied them.[14] Relevant to this appeal, the circuit court did not mention the dollar amounts that the court awarded in its oral ruling on September 29, 2021, nor were the amounts awarded discussed at all.

¶50 As a part of the court's order dated November 30, 2021, the court awarded "[r]easonable attorney fees to be determined upon submission of an Affidavit of Fees by [the Liskas' counsel]." On December 28, 2021, counsel submitted an affidavit reflecting costs of $70 and attorney fees of $12,690 for Legal Action of Wisconsin, Inc. and a proposed order. The circuit court filed its order on January 5, 2022. The court's order appears to have combined the amounts awarded by Judge Conen from his July 17, 2020 order for partial summary judgment and Judge Sosnay's order dated November 30, 2021, plus the additional $12,760 for costs and attorney fees. However, the January 5, 2022 order provides no more explanation of how the court determined the amounts awarded to the Liskas' for their claims as a sanction than the court's November 30, 2021 order.

¶51 Consequently, we also conclude that because we cannot discern how the circuit court determined the amounts that it awarded as a sanction against Bublitz that the court erroneously exercised its discretion in this regard. A court erroneously exercised its discretion when it "fail[s] to set forth the reasoning underlying its decision." *Siva Trucking Leasing, Inc. v. Kurman Distribs.*, 166 Wis. 2d 58, 72, 479 N.W.2d 542 (Ct. App. 1991). Thus, we reverse the circuit court's November 30, 2021 order and remand with directions that the circuit court

---

[14] On appeal, Bublitz does not address this motion and makes no reference to WIS. STAT. § 806.07 or the court's order. We, therefore, consider any related argument(s) abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

set forth the reasons underlying its award of damages as a result of the default judgment and any amount awarded as a financial sanction.

*By the Court.*—Orders affirmed in part, reversed in part, and remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.